## Louisville Bridge & Terminal Company, et al v. Brown, By, etc.

(Decided November 10, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas, Fourth Division).

1. Railroads—Negligence in Failing to Discover Boy's Presence on Track Held for Jury.—Whether 10 year old boy was injured while hopping off and on train, or through negligence of train operatives in failing to discover his presence on track, with foot caught between rails, held under evidence for jury.

2. Railroads—One Caught in Rails Not Trespasser.—Rule that one who sits or prostrates himself on railroad track, though it be at public crossing or place where persons are licensed to use track,

is in position of trespasser, has no application to one, who, being caught in rails, prostrates himself immediately before train to avoid being killed.

3. Appeal and Error—Permitting Jurors to Question Witnesses Held Not Prejudicial.—In action against railroad for personal injuries of boy caught in rails, permitting jurors to question witnesses to considerable extent held not prejudicial, though irrelevant and incompetent matter was admitted; there being no objection by counsel.

4. Witnesses—Jurors have no Right to Ask Witnesses Incompetent and Irrelevant Questions, and Objection thereto should be Sustained.—Jurors permitted to question witnesses have no right to ask an incompetent or irrelevant question, and objection of counsel to such a question should be sustained.

MARVIN H. TAYLOR, WOODWARD, WARFIELD & DAWSON, HUMPHREY, CRAWFORD & MIDDLETON, EDWARD P. HUMPHREY and ROBT. P. HOBSON for appellant.

ROBERT G. WULF and KENDERICK R. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This appeal by the Bridge and Terminal Company seeks the reversal of a judgment for $6,500.00 against it and in favor of appellee Brown, an infant, by his statutory guardian, for the loss of a leg through the negligence, as it is charged, of the company in the operation of one of its trains along Fourteenth street, in Louisville. On the night of April 26, 1923, appellee Brown, a boy about ten years of age, with two companions, went to a carnival in Louisville, some distance from his home. Some time about ten o'clock they left the carnival to return home. On their way they came to the intersection of Broadway and Fourteenth street. The tracks of appellant company extended along Fourteenth street at this intersection, and the boys turned north on Fourteenth street, following the railroad tracks, although they were traveling along the walk on the west side of the street. About the time they reached Esquire street, which crosses Fourteenth, one of appellee's companions declared his intention to leave them and go home by another street and did so. About the same time appellee decided to cross the street and take a certain named route for home, and the other boy started with him. In crossing the street it was necessary to cross the tracks of appellant company; at that point there were

two main tracks, one northbound and one southbound, and two switch tracks, one on the east side and one on the west side of the mains. There was no street light nearer than the intersection of Broadway, about 280 feet away, but there were two or three small switch lights about the point where appellee started to cross. In attempting to cross the tracks appellee stepped into the space between the rails at a switch point and his foot became hung, and he could not remove it; thereupon he called his companion, a boy about his age, to help him loosen his foot, and his companion attempted to pull his foot out of the switch but could not do so. About that time they observed the engine of a train approaching from the Broadway side and within about 280 feet of them; after making additional efforts to release the foot of appellee without success, appellee's companion, to avoid the oncoming train, ran to the sidewalk, and appellee to save his body from collision with the train had the presence of mind to lie down on the ground between the tracks with his foot still hung in the switch at a point where the wheels of the engine and cars would have to pass. The train ran over his foot and mashed it off. Later he was carried to the hospital where it was found necessary to take his leg off above his knee.

The theory of the appellant company, as we gather from its brief, is that appellee was not hurt in the way and manner claimed by him but that he with other boys were hopping on and off the train and that in some way, unexplained in the record, he met with the accident which cost him his foot. There is no evidence to support this theory, save that given by the trainmen in charge of the locomotive which cut off appellee's foot wherein they stated that they were keeping a diligent lookout ahead of the train for persons on the track and did not see or know of the presence of appellee at that point, if such evidence does in fact support that theory. On the other hand, appellee is supported in his evidence by his companion, Willie Muford, who related the circumstances about as stated by appellee, Brown. He is also corroborated in many of the facts by a railroad watchman at a nearby crossing and by several other persons. At any rate the controverted fact of when, where and how appelee, Brown, met with his accident was for the jury.

Appellant company insists that the trial court erred in overruling its motion for a peremptory instruction made at the conclusion of the testimony because, as argued by appellant, the rule is that where a person is lying down or sitting upon a track, the railroad company is not liable unless its employes in charge of the train actually saw his danger in time to avoid striking him, and in support of this contention cite and rely upon the cases of Davis, Director General v. Crawford, 203 Ky. 71-73; Lee's Admr. v. Hines, Director General, 202 Ky. 240; Bevin's Admr. v. C. & O., 190 Ky. 501.

The facts of the foregoing cases upon which appellants rely are very different from the ones we are now considering. In the Crawford case, *supra,* the accident happened about 5:10 in the afternoon of October 31st, at a time when it was almost dark. The engineer and fireman in charge of the train gave the only evidence concerning how the accident happened, the engineer saying that Crawford was first seen lying between the rails on the track when his attention was first directed to him by Crawford raising his head and looking towards the approaching train; that the train was only a very short distance from Crawford at the time the engineer discovered his presence upon the track; that Crawford was not upon a public crossing or a public street, and therefore was a trespasser. After stating the facts, we said:

"It is argued for appellee (Crawford) that the whistle should have been blown or the bell rung to warn the trespasser of his danger. The evidence in the record is that the trespasser first attracted the attention of the engineer and head brakeman by raising his head facing toward the onrushing train. According to the uncontradicted testimony as to the distance from the train to the trespasser, when his peril was discovered and the rate at which the train was traveling, no warning that could have been given at that time could have served to arouse the trespasser to a realization of his danger in time for him to clear the track and remove himself from his position of danger. If, instead of applying the emergency brakes, the engineer had consumed a portion of the exceedingly small period of time at his disposal in blowing the whistle, appellee would not be contending that in that particular he was negligent.

"After a careful consideration of all the testimony introduced upon the trial of this case, we have reached the conclusion that there is not a scintilla of evidence that those in charge of the train in question failed to use any of the means at their command to prevent the death of Crawford after his peril was discovered, or that anything they then could have done would have saved his life. Hence, the court below should have peremptorily instructed the jury to find for appellant."

The rule was properly applied to the facts in that case.

In the Lee's Admr. v. Hines case, *supra,* we held that train operatives were not under a duty of maintaining a lookout for persons lying or sitting on the railroad track used as a walkway by the public. The facts in that case are also distinguishable from those in this case, in this, that the accident happened at a place not on a public crossing not on a public street, and the infant was sitting or lying upon the side of the track.

In the Bevins v. C. & O. Ry. Co. case, *supra,* we said:

"The decedent was lying prostrate on the crossing and across the sidetrack. Why he had thus placed himself, whether from intoxication or from some other cause, was wholly unexplained."

We have several times held that one who sits or prostrates himself upon a railroad track, though it be a public crossing or other place where persons are licensed to use the track, is in the same position as a trespasser, and in such case train operatives are only required to use ordinary care to save such persons after discovering their peril, albeit sometimes without making the proper distinction, which we think must necessarily follow, that a person sitting or lying upon the track at a public crossing or other such place where licensees have a right to be, was not in such position as to be seen by the exercise of reasonable care in the maintenance of an outlook from the train, and not in such position before the train reached the point from which the engineer and fireman, by the exercise of ordinary care, in the exercise of the duty of maintaining a lookout, could have seen and discovered his presence upon the crossing or other place along the track, where it was their duty to maintain a lookout. In other words, the court in writing those opin-

ions did not have in mind a situation similar to the one manifested by the facts before us now. Here the evidence shows that the ten-year-old boy, Albert Brown, after discovering that his foot was hung between the rails and the switch point, called for assistance and that his companion came to help him and that the two standing upon the track and only a short distance in front of the engine attempted to loosen the foot of appellee; that they continued in their efforts to free appellee's foot until the train came very close to them, and it was necessary for appellee's companion to run away in order to avoid being struck by the train, and for appellee to prostrate himself on the track to save his body from the same fate which he knew was to become the portion of his foot hung in the rails. Just how close the engine was to appellee at the time he prostrated himself is not shown in feet or yards, but from all that the witnesses say upon the subject the jury must have concluded that the train was within a few feet. The evidence of the trainmen also show that they could not see around the front of the engine closer than fifty feet but that they could see along a straight track for a distance much greater than that which intervened between Broadway and the point where appellee was struck on Fourteenth street. Therefore, if the jury accepted the evidence of appellee, Brown, and his companion as true, the conclusion inevitably followed that the trainmen were not keeping an efficient lookout in front of the train at the time they approached the switch in which appellee was hung, else they would have discovered his peril about the time the engine crossed Broadway, 280 feet away and in time, the speed of the train, four or five miles an hour, being considered, to have brought the train to a full stop long before it reached appellee. At any rate, if the jury believed the evidence of appellee and his companion, the only witnesses who recited the facts, it must have reached the conclusion that the boys were standing upon the track in plain view of those in charge of the approaching engine at the time the engine crossed Broadway, 280 feet away, and for some time thereafter; and further, that if the trainmen had been maintaining an outlook in front of the train, as was their duty, they would have discovered appellee and his companion upon the track and would have become conscious of the fact that appellee's foot was hung in the switch and that he was unable to move off the track, and the trainmen could have brought the train

to a full stop and thus have saved the injury to appellee. These questions were properly submitted to the jury and the jury found against appellant company.

Certainly it cannot be seriously contended that the cases cited by appellant in its brief as holding that when a person is lying down or sitting upon a track the railroad company is not liable unless its employes in charge of the train actually saw his danger in time to save him, has application to a state of facts where one hung on the track in a public street where the railroad company is bound to maintain a lookout for persons upon the track and to operate its train at a moderate rate of speed, prostrates himself immediately before the train reaches him in order to avoid the train striking his body, as was true in this case, if the evidence of appellee is to be accepted. In other words, the train operatives had full opportunity to see and know of the presence of appellee, Brown, upon the track, while he was standing up and in plain view, had they maintained the lookout which the law requires. We, therefore, conclude that appellant was not entitled to a peremptory instruction and that the court properly submitted the case to the jury.

Appellant next complains that the jurors asked questions of the witness during the trial and in doing so indicated prejudice and bias against appellant and in favor of appellee. Acting upon this hypothesis appellant at the conclusion of the evidence moved the court to discharge the jury and to continue the case upon the ground that the jurors had taken an active part in the examination of the witnesses and had indicated bias. This motion the court overruled. The record discloses the fact that members of the jury asked witnesses during the trial many questions, some of which were as follows:

"Q. Juror to appellee Brown: You do not remember whether those signal lights were burning at the time? You see this switch is right between these two signal lights (indicating on map and photograph). You see these two lights? You do not remember whether those lights were burning or not do you? (Witness then starts to answer, and the juror continues). You remember these lights burning? You saw these two lights here, did you, or did you not? A. Yes, sir, but I did not see the switch.

"Q. By a juror: You saw the lights but you didn't see the switch? A. Yes, sir."

Both the map and the photograph about which the witness was being questioned were put in evidence and they are now before us.

Many other questions were asked by the jurors. Once or twice members of the jury asked questions which indicated they wanted to bring out a fact which might have been considered as advantageous to appellee by some persons, and to his disadvantage by others. Not being skilled in the practice of interrogating witnesses the jurors naturally formulated questions often leading in their character, and sometimes asked about matters wholly irrelevant and sometimes incompetent. But counsel did not object to the questions and therefore are now precluded by their silence. We have not only failed to condemn the practice of jurors asking questions of witnesses but have approved it, regarding it as likely to aid the jury in finding out and learning the real facts and especially enabling them to understand the evidence that is being given. Of course, if a juror should ask an incompetent or irrelevant question and counsel should object to it, the court would sustain such objection, for a juror has no more right to ask an incompetent or irrelevant question than has counsel, but in the absence of objection it is not the province of the court to intervene and stop jurors from asking questions where the questions are calculated to illicit relevant facts and aid the jury in understanding the issues to be tried. 200 Ky. 133; 188 Ky. 435. After a careful examination of the transcript of evidence showing the questions asked by the jurors we are of opinion that the substantial rights of appellant were not prejudiced by the interrogation of the jurors. As the record manifests no substantial error to the prejudice of appellant, the judgment is affirmed.

Judgment affirmed.