OPINION
This appeal is brought by Bryant Keith Cobb ("Appellant") from a judgment of conviction and sentence entered by the Court of Common Pleas of Seneca County following a jury verdict of guilty on one count of possession of cocaine, a violation of R.C. 2925.11(A) and (C)(4)(f) and a first degree felony. Based upon the discussion set forth below, we affirm the judgment of the trial court.
On October 11, 1999, Appellant traveled from Marion, Ohio, to Detroit, Michigan, with two female acquaintances, Jamie Thomas and Tiffany Davis. Thomas' three-year-old child was also present. Appellant gave each of the girls $50 to drive him in Thomas' green Ford Tempo. They began the journey at approximately 12:30 a.m. Thomas drove the vehicle for the majority of the trip, however, once they reached the Detroit area, Appellant took over.
While in Detroit, Appellant stopped at a residence and went inside for several minutes. None of the other occupants of the vehicle accompanied him. Thereafter, Appellant drove to his mother's house where he and his friends slept for the rest of the night. After running a few errands later that morning, Appellant and his friends began traveling back to Ohio with Appellant driving the same Ford Tempo.
As he drove through the City of Fostoria, Appellant was involved in a minor auto accident with a pick-up truck. Although Appellant asked them not to, the occupants of the truck contacted the police immediately following the collision. Appellant then walked around to the passenger side of the vehicle and began "messing" around under the seat. Upon his arrival to the scene, Fostoria Police Officer Stan Sayre noticed Appellant sitting near the trunk of the vehicle.
Officer Sayre began an investigation into the cause of the accident. Among other things, he asked Appellant to identify himself. Appellant provided the officer with false information twice, initially telling him that his name was Kevin Smith, and then stating that his first name was Brian instead of Bryant. In addition to communicating false names, Appellant also provided the officer with incorrect birth dates and social security numbers. Officer Sayre detained Appellant for investigatory purposes in order to ascertain his true identity.
Once he was able to obtain the correct information, Officer Sayre asked Jamie Thomas if he could conduct a search of her vehicle. After brief hesitation, Thomas consented. In the midst of the search, Officer Sayre discovered a pair of thick construction gloves under the front passenger seat. Upon handling them, he noticed that the gloves felt heavier than they appeared. The officer then looked inside the gloves and found what was later determined to be approximately 107 grams of crack-cocaine.
These events led to an indictment charging Appellant with possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f). Appellant pled not guilty to the charge, and the case was eventually tried to a jury in January 2000. After a two day trial, the jury returned a guilty verdict. The court entered judgment accordingly and sentenced Appellant to a mandatory ten year prison term. Appellant then perfected this timely appeal, asserting one assignment of error for our review:
 The trial court erred in allowing the jury to ask questions of witnesses at trial where such questions were prejudicial to the appellant and substantially affected the appellant's right.
The record reveals that during the course of the trial, the court permitted the jury to submit written questions for the witnesses. After allowing both sides to review the question and making a ruling as to the propriety of the particular inquiry, the court would read it aloud to the witness. Both the prosecuting attorney and defense counsel then had the opportunity to ask limited follow-up questions depending upon the witness' answer. This process was employed a total of eight times during the trial, and is now the sole basis for Appellant's claim that he is entitled to a reversal. For the following reasons, we must reluctantly disagree.
The issue of whether it is proper to permit jurors to ask witnesses questions during trial was first addressed in this state by the Court of Appeals of Cuyahoga County in the now famous case of State v. Sheppard (1955), 100 Ohio App. 345, 128 N.E.2d 471,aff'd (1956), 165 Ohio St. 293, 135 N.E.2d 340. In that case, the court held that while the practice should generally not be encouraged, "the right of a juror to ask questions of a witness during trial is clearly within the sound discretion of the trial court." Id. at 390. Since the release of the Sheppard opinion, several appellate districts in this state have adopted similar rationales. See State v. Wayt (1992), 83 Ohio App.3d 848,615 N.E.2d 1107; State v. Mascarella (Jul. 6, 1995), Tuscarawas App. No. 94 AP 100075, unreported; City of Logan v. Quillen (Oct. 27, 1995), Hocking App. No. 94CA26, unreported; State v. Sexton (Nov. 24, 1982), Clark App. No. 1689, unreported.
A variety of foreign jurisdictions also allow juries to participate in trials by posing questions to witnesses. See, e.g.State v. LeMaster, (1983), 137 Ariz. 159, 669 P.2d 592; Slaughterv. Commonwealth (Ky. 1987), 744 S.W.2d 407; People v. Wesley
(1986), 148 Mich. App. 758, 384 N.W.2d 783; Byrge v. State (Tenn. 1978), 575 S.W.2d 292. In fact, some of these out-of-state courts consider jury questioning to be necessary and often helpful. SeeRudolpyh v. Iowa Methodist Medical Center (Iowa 1980),293 N.W.2d 550; Louisville Bridge Terminal Co. v.Brown (1925), 211 Ky. 176, 277 S.W. 320.
Nonetheless, we believe that even though the practice is subject to an abuse of discretion standard, the dangers associated with it far outweigh any potential advantage. Aside from the obvious fact that the scope and form of the questions may unduly complicate the trial if the judge fails to implement a controlled procedure, we believe that this type of jury participation places the attorneys for both litigants in an awkward position. If an attorney lodges an objection to a particular question, a juror, who is most likely unfamiliar with the complexity of the rules of evidence, may assume that the attorney protested in order to conceal evidence. See, e.g., Sylvester, Your Honor, May I ask a Question? The Inherent Dangers of Allowing Jurors to Question Witnesses, Comment (1990), 7 Cooley L. Rev. 213, 217. This, in turn, may cause some attorneys to hesitate or fear making legitimate objections so as not to offend the jury, thus, irrelevant evidence may ultimately be admitted. Id. Indeed, even if the court replaces spontaneous oral questioning with the submission of written inquiries, as in this case, the risks to the litigants are not alleviated since jurors may tend to concentrate on a particular bench conference in order to decipher which attorney is objecting. Id.
Furthermore, we believe another significant hazard associated with this procedure is that the jury's traditional role as that of a neutral factfinder becomes distorted. See generally,Mascarella, supra, at * * 8. By being able to ask the witnesses questions, the jury assumes the position of an advocate, actively seeking out the facts instead of grappling with what has been provided by the lawyers. Id. Likewise, members of the jury may begin to deliberate well before the conclusion of the case if they are permitted to, in essence, "root" for one side over the other.
For all of the foregoing reasons, this court suggests that a trial court's decision to allow the jury to ask questions of the witnesses is usually ill-advised. Similar to the opinion announced in the Sheppard case, we find that the practice should be discouraged in all trial settings.
Unfortunately, this does not mean that a reversal is automatically warranted anytime a trial court chooses to employ this type of procedure. The law in Ohio is well-settled that "[i]n order to support a judgment of reversal, the record must affirmatively show that such error prejudiced the appellant."State v. Stanton (1968), 15 Ohio St.2d 215, 239 N.E.2d 92, paragraph two of the syllabus. Thus, an appellant must demonstrate resulting prejudice in order for a reviewing court to overturn a judgment based upon the trial court's decision to allow jurors to question the witnesses.
In this case, Appellant cannot satisfy that burden. As we have already mentioned, the trial court took precautionary measures to eliminate potential problems by directing the jurors to submit written questions and allowing both attorneys to review the inquiries prior to posing them to the witnesses. Again, although we do not consider these precautions to be infallible, the record herein does not indicate that the jurors displayed any overt bias during this procedure.
Moreover, we do not find that the actual questions put forward reflect such prejudicial attitudes so as to necessitate a reversal. It appears only as though the jury wanted to clarify rather innocuous factual issues such as the street value of 107 grams of crack, and which route Appellant took to travel from Marion to Detroit. Therefore, we do not believe that Appellant's trial was prejudiced by the court's decision to allow the jurors to question the witnesses. While we reiterate our aversion to this practice, we must overrule Appellant's assignment of error.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
 __________________________ WALTERS, J.
HADLEY, P.J., and BRYANT, J., concur.