## Stevens v. Commonwealth.

(Decided February 6, 1923.)

### Appeal from Graves Circuit Court.

Intoxicating Liquors—Evidence.—The evidence examined and held sufficient to sustain a conviction against defendant on the charge of "knowingly letting his premises for the unlawful manufacture of intoxicating liquors."

STANFIELD & STANFIELD for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

James Stevens appeals from a judgment of the Graves circuit court inflicting a fine of $50.00 and thirty days' imprisonment upon him, on the charge of "knowingly letting his premises for the unlawful manufacture of intoxicating liquors." The only question presented for reversal by counsel is that the verdict is not sustained by the evidence.

Appellant had secured a deed to a tract of land upon which the still was found on a certain Friday, and it was found on Tuesday night following, but he lived on an adjoining tract of land. The purchased tract contained 75 acres without any improvements on it, with a hollow and thicket on far side from appellant's house, the still being located in this thicket between one-quarter and one-half mile from the house. There had been rumors for several days about a still being in the neighborhood, and it seems that his father-in-law had found a worm in a nearby field and carried it home and this had been stolen out and carried down on his place on Tuesday, but appellant does not seem to have been implicated in this. At any rate considerable talk was indulged in the community, and there seems to have been a general lookout.

On Tuesday night Dixie Stevens, a step-brother of the appellant conveyed information to the officers that a still had been located on appellant's farm. They went to the place and found the still in operation, but no one around. As they left they met appellant and upon questioning him he stated that he knew of the location of the still, but had first learned of it that night; that he had come to the back side of his farm to see about a fence and had discovered a smoke in the thicket; that he had gone over to investigate when he was intercepted by two men who forcibly detained him, and compelled him to replenish the fire; that after a while they let him go and he started home and near the house met his step-brother, Dixie Stevens, and told him of the occurrence, and that Dixie first proposed to capture the perpetrators, but that appellant suggested they were dangerous men, and then Dixie proposed for them to go after the officers, to which appellant assented; but suggested that he must first see his wife, and that Dixie went on, with the results above mentioned.

As to the truth of this talk with Stevens he is corroborated by that witness.

Raymond Brown testified that he and Henry Jackson secured the worm mentioned above and started with it to the still; that on their way they passed through appellant's field and had a conversation with him about it; that they had the worm covered with a coat at the time, but discussed the matter with him, and secured his permission to make the whiskey on his place; that he directed them the way to go in order to avoid his father-in-law, who was opposed to that business; that they did go as directed and that later appellant joined them and took part in what they were doing, and was given a pint of the liquor. He further says that no duress was exerted over appellant, and that the three left the still at the same time, he and Jackson going to a dance.

It further appears that Brown had a very bad reputation for truth and veracity; that he had made conflicting statements about this matter, and that he was at first arrested charged with the unlawful manufacture of liquor and had secured immunity from prosecution by reason of his testifying as a witness.

Appellant denies all complicity, denies the conversation which Brown stated occurred on the afternoon in question. Admits that he saw Brown and another man in the field, but says that the only conversation that they

had was as to whether they might hunt birds in his field.  He denies getting any liquor at the still but admits that under duress as above suggested he did kick a few chunks under the fire while being thus detained.

After the still was destroyed the appellant accompanied the officers to the dance to identify the parties that were running the still, if they could be found.  Both Henry Jackson and Raymond Brown were there.  The appellant knew the latter and the former was pointed out to him, and he claimed that neither of them were the men operating the still.  Since then Henry Jackson has run away, and Raymond Brown testifies that they were the ones.  So far as the evidence shows no one else has ever been implicated.

It may be admitted that the evidence is not very strong against appellant, yet the jury had the right to consider all the circumstances as well as the facts proven in the case, and it was their province to say which set of witnesses they would believe, or as to which set was corroborated by the circumstances in the case.

It is an established rule in cases of this character that the verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain a verdict, unless it clearly appears that the verdict is so palpably and flagrantly against the weight of the evidence as to induce the belief that it was reached as a result of passion and prejudice on the part of the jury returning the verdict.  Allison v. Commonwealth, 196 Ky. 140; Franklin v. Commonwealth, 195 Ky. 816; Cloninger v. Commonwealth, 191 Ky. 841.

Under these rules we cannot say that the verdict of the jury was palpably and flagrantly against the weight of the evidence or that their verdict strikes one at first blush as having been reached as a result of passion and prejudice.

Wherefore, judgment is affirmed.