## Morris v. Commonwealth.

(Decided April 17, 1928.)

### Appeal from Breathitt Circuit Court.

1. Rape.—Evidence held sufficient to sustain conviction for rape.
2. Rape.—Fifteen-year sentence in penitentiary fixed by jury as part of verdict in prosecution for rape held not excessive.

R. A. DUNN and G. B. STAMPER for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Elisha Morris was tried, convicted, and sentenced to a term of 15 years in the state penitentiary on a charge of rape. On this appeal the only grounds seriously urged for a reversal are: (1) That the court erred in failing to give a peremptory instruction to the jury to find the defendant not guilty; (2) that the verdict is not sustained by the evidence; and (3) that the punishment fixed by the verdict is excessive—all of which may be considered together.

The prosecuting witness, Dora Deaton, wife of Lane Deaton, and her six children, the eldest of whom was 10

years of age lived at Wolf Coal in Breathitt county. Lane Deaton worked at Hazard some 20 miles distant, his custom being to go home on Saturday afternoon, spend that night at home, and to return Sunday morning, leaving his family alone in the meantime, their nearest neighbor being a brother of Mrs. Deaton who lived about one-fourth of a mile distant. The defendant, a young man 21 years of age, lived with his father three-fourths of a mile away from the Deaton home.

The offense was committed on Sunday night, May 1st. The weather was cool, and Mrs. Deaton says her baby was ill; that upon retiring she threw some coal upon the fire which lighted the room; that about 11 o'clock she was aroused by a noise, and looking up saw the defendant with a dipper in his hand taking a drink of water. She asked him what he wanted, and he told her he was there for money. She ordered him out, and he said he was not going until "what was done that he came for." She jumped out of bed and ran to the door, opened it, and screamed for her brother. He started out the door, shoved her back, closed the door, and caught her and forced her back into an adjoining room, closed the door after them, and told her that he had committed similar acts with other women and that he would not tell it on her, and if she told he would kill her. He put his hand in his back pocket as if to draw a weapon, and told her that if she procured a warrant for him he would swear himself out and he would swear that she consented. He was intoxicated, and she was thoroughly alarmed. Thereupon he compelled her to remove a cover from the table to the floor and lie down and submit to the sexual act, all of which was accomplished against her will and through intimidation. When the defendant first entered the room she had awakened her eldest daughter, who jumped up, but was so frightened that she returned to her bed, and upon leaving the defendant told her to say to the children that some one else, not he, had been there. She had a shotgun in the house and remained during the night with the children. Her brother passed the house the next morning, but she did not speak to him. Later in the day, Monday, she had a warrant issued for defendant. The little girl, aside from minor contradictions, substantially corroborates her mother as to what occurred. It is further shown that the defendant left the neighborhood the following day and was arrested at McRoberts on the following Saturday.

Defendant testifies that he had been intimate with Mrs. Deaton and had had sexual intercourse with her twice previously, once in her home; that on Sunday afternoon he rode by her house going to the railroad station; that she was writing a letter at the time and invited him to stop on his return, which he agreed to do; that upon his return he tapped on the door, which she opened; that he went into the room, got a drink of water and sat down; that she suggested that they had better go into the kitchen as the children might tell on them; that he went into the kitchen, and she willingly followed him, bringing a blanket from her bed which she spread upon the floor; that while engaged in the sexual act one of the children came to the door and saw them; that he went out the kitchen door and on home, the inference being that when thus discovered she sought justification by falsely accusing him of a crime; that he left the vicinity on account of a warrant on some liquor charges. All of his incriminating statements are denied by the prosecuting witness, who admitted seeing him pass in the afternoon, but said that her stepmother was present at the time and that no conversation occurred. The stepmother was not called as a witness.

As defendant admits the sexual act, the only point in dispute is as to whether the prosecuting witness consented thereto. It was for the jury to determine this issue in the light of the surrounding circumstances, and appellant's brief contains an admirable argument if addressed to that body; but it is not for this court to say which of the conflicting statements is true. Certainly there was sufficient evidence to submit this issue to the jury, and if they believed the prosecuting witness there was sufficient evidence to support the verdict, and it cannot be said that the verdict is flagrantly excessive. See Cooley v. Com., 185 Ky. 142, 214 S. W. 898; Stevens v. Com., 197 Ky. 561, 247 S. W. 727; Wattles v. Com., 185 Ky. 486, 215 S. W. 291; Miller v. Com., 188 Ky. 435, 222 S. W. 96; Mattingly v. Com., 199 Ky. 727, 251 S. W. 953. We do not deem the other questions suggested of sufficient merit to authorize a further discussion.

Wherefore, perceiving no error, the judgment is affirmed.