## Tobacco Workers' International Union v. Weyler et al.

Oct. 17, 1939.

J. Miles Pound, James W. Stites, Trabue, Doolan, Helm & Stites and Edward F. Seiller for appellant.

Richard P. Dietzman, Edwin C. Willis, Robert L. Sloss and Julian N. Elliott for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Tobacco Workers' International Union, a trade union of workers in the tobacco industry, was organized in 1895. It is a voluntary association, and its present constitution has been in effect since January 1, 1901. There are 43 local unions scattered throughout the United States, and the total membership is approximately 16,000. The number of members of the various locals ranges from about 25 in the smallest to approximately 3,000 in Local Union 185 located in Louisville, Kentucky. E. Lewis Evans has been secretary-treasurer of the Tobacco Workers' International Union, hereinafter referred to as the T. W. I. U., since its organization, and International president-secretary-treasurer since 1925 when the offices of president and secretary-treasurer were combined. The constitution provides that the officers of the T. W. I. U. shall consist of the International president-secretary-treasurer and six vice-presidents, and that these seven officers shall constitute the International Executive Board. Wide powers are lodged in the president-secretary-treasurer and the board. The constitution provides a method for calling a convention of the T. W. I. U., prescribes the manner of electing delegates thereto, and fixes the number of delegates each local union is entitled to elect, based on the number of members of such local. No convention of the T. W. I. U. has been held since 1900. The constitution provides that a convention shall be held when authorized by a two-thirds majority vote of the members of the International Union. Conceiving that it would be for the best interest of the union that a convention should be held, a movement with that end in view was started. The membership of Local Union No. 185 voted to submit a resolution to the president-secretary-treasurer of the T. W. I. U. calling for a vote of the membership as to whether or not a convention should be held in October, 1939. President Evans sent the resolution to each local union, and 24 of the local unions held elections on the convention question and submitted the results to the

president. Thirteen of the local unions voted in favor of the convention and 11 against it, but the popular vote was 5,277 in favor of the convention and 2,406 against it. The president-secretary-treasurer, by a method of canvassing the vote not necessary now to mention, found that only 3,884 votes had been cast, and 1,888 of these had been cast in favor of a convention and 1,996 against it. He also found that two-thirds of the total vote cast was 2,589, and as only 1,888 votes were cast in favor of a convention he declared the convention issue lost by 701 votes. Certain members who were dissatisfied with his ruling appealed to the International Executive Board, which rendered a decision on July 15, 1939, upholding the ruling of the president-secretary-treasurer.

An action was brought in the Jefferson circuit court against E. Lewis Evans, president-secretary-treasurer of the T. W. I. U. and the six vice-presidents comprising the International Executive Board, in which the plaintiffs sought a mandatory injunction requiring the defendants to take the steps provided for or required by the constitution of the T. W. I. U. for calling and holding a convention. The plaintiffs alleged in their petition that, pursuant to a request made of him, E. Lewis Evans, president-secretary-treasurer of the T. W. I. U., issued a call for a vote to determine whether a convention should be held, and that pursuant to the call an election was held by secret ballot by the local unions of the T. W. I. U., and that more than two-thirds of those voting on the question voted in favor of a convention, but that Evans, in canvassing the returns, unreasonably and unlawfully refused to count certain votes and wrongfully declared that less than two-thirds of those voting had voted in favor of a convention. It was alleged that he refused to count the vote of Local Union No. 185 of Louisville, Kentucky, which voted 2,474 for a convention and 34 against, and the vote of Local Union No. 178 of Winston-Salem, North Carolina, which voted 266 for a convention and 41 against. It was also alleged that he refused to count the votes of a number of other local unions which reported that their membership had voted unanimously for a convention. It was also alleged in the petition that Evans had been guilty of dictatorial practices and had arrogated to himself undelegated powers in violation of the express provisions of the constitution of the T. W. I. U. and had failed to give an understandable accounting of the fiscal affairs of the union, and that he and other members of the Interna-

tional Executive Board were wrongfully refusing to call a convention and to take the steps prescribed by the constitution for holding a convention after two-thirds of those voting on the question had voted in favor of a convention. The defendants' answer was merely a traverse. In an amended answer and plea in abatement, they alleged that the plaintiffs had not exhausted their remedies within the union, since they had not appealed from the ruling of the International Executive Board to a popular vote of the membership of the International Union as provided for in Section 21 of the constitution.

By agreement a special commissioner was appointed to hear testimony and recanvass the vote of all local unions making returns on the question of whether or not a convention should be held by the Tobacco Workers' International Union and to report his findings. The commissioner heard proof and reported that 5,277 votes had been cast in favor of holding a convention and 2,406 votes against it, and that the convention call received more than the necessary two-thirds votes required under the constitution of the International Union. On August 7, 1939, an agreed judgment was entered adjudging that the resolution for a convention to be held in the month of October, 1939, had carried by more than the required two-thirds majority of those voting thereon, and the defendants be mandatorily enjoined and directed to call a convention of the Tobacco Workers' International Union, in accordance with the agreement of the parties theretofore entered into in court, to be held in Louisville, Kentucky, beginning on the 23rd day of October, 1939, and that the defendant E. Lewis Evans, as president-secretary-treasurer, cause to be done all acts provided for by the constitution of the T. W. I. U. preparatory to the calling and holding of a convention. The judgment contained this provision:

"The matter of costs is reserved until the Tobacco Workers' International Union shall have been made a party thereto, and the plaintiffs are now directed to file an amended petition making the Tobacco Workers' International Union a party to this action."

It appears that this provision was inserted in the judgment at the suggestion of the defendants so that the costs would not be adjudged against them personally. The judgment also contained this provision:

"There shall be no appeal from this judgment to the Court of Appeals in accordance with the aforesaid agreement of the parties."

As heretofore stated, the judgment was entered by consent of all the parties. On the following day the plaintiffs filed an amended petition as directed in the judgment, making the Tobacco Workers' International Union a party defendant. On September 7, 1939, the plaintiffs filed a motion for a rule against the defendant E. Lewis Evans to show cause why he should not be held in contempt of court for failure to obey the order of injunction theretofore issued. On September 20, 1939, the Tobacco Workers' International Union moved the court to set aside the judgment theretofore entered, and to permit the defendant to file its answer. It tendered an answer similar to the answer that had been filed by the individual defendants, and, in addition, raising the question of construction of Section 3 of the constitution of the Tobacco Workers' International Union. On September 21, 1939, the motion to set aside the judgment of August 7, 1939, was overruled, and that judgment was extended to the defendant Tobacco Workers' International Union. Its motion to suspend the injunction during the pendency of the appeal also was overruled. Subsequent to the entry of the consent judgment on August 7, 1939, the defendant E. Lewis Evans issued a call for a convention to be held at Louisville, Kentucky, beginning October 23, 1939, and directed that delegates to the convention be elected by each local union in the manner prescribed by the constitution of the T. W. I. U. Pursuant to the call, the various local unions elected their delegates, and arrangements for the convention were made. The T. W. I. U. has appealed from that portion of the judgment directing E. Lewis Evans, International president-secretary-treasurer of the union, to call a convention.

The appellees argue that appellant, though not named a party to the action prior to the entry of the consent judgment, has been a party throughout the litigation under the doctrine of virtual representation, and is bound by the agreements entered into between the plaintiffs and defendants which were incorporated in the judgment. Other arguments for an affirmance of the judgment are advanced, but, since the appellant has waived all technical objections to the proceedings and the judgment and rests its claim for a reversal solely

on what it insists is the proper construction of Section 3 of its constitution, our consideration of the case will be confined to that question. Appellant insists that the circuit court erred in construing the word "members" in Section 3 of the constitution of the T. W. I. U. as meaning individuals and not local unions.

Section 1 of the constitution reads:

"This body shall be known as the Tobacco Workers' International Union, and shall consist of all Local Unions of like craft, who shall establish their claim to membership by a certificate of election, signed by the International President-Secretary-Treasurer, also bearing the seal of the International Union."

Section 3 reads:

"The holding of Convention shall be decided by a referendum vote of the members of the International Union. A two-thirds majority vote in the affirmative being required to so decide."

It is appellant's contention that under its constitution it is a federation consisting of local unions which constitute its members, and that proper construction of Section 3 of the constitution requires a two-thirds vote of the local unions rather than a two-thirds vote of the individual members of the locals. If Sections 1 and 3 are read together and wholly apart from the other sections of the constitution, appellant's argument is plausible if not entirely convincing, but a careful consideration of the constitution as a whole convinces us that the term "a referendum vote of the members of the International Union" means a vote of the individuals composing the union and not of the local unions as units. It was evidently the intention of the framers of the constitution to create a democratic organization. The constitution contains 117 sections, and from the first section, to the last, evinces the purpose to have all important questions decided by popular vote and not a vote of the locals as units. Throughout the constitution individuals are referred to as members of the Tobacco Workers' International Union.

For instance, Section 10 provides:

"No member shall be eligible to office as a delegate or alternate unless they shall have been members of

the Tobacco Workers' International Union for one year prior to election.''

Section 14 provides that ''any member of the International Union, providing he or she has been a contributing member in good standing for not less than two years prior to the election shall be eligible to any office in the International Union.''

Section 16 prescribes the method of voting for officers of the International Union, and provides that ''each member of the Tobacco Workers' International Union shall be entitled to vote for one candidate for International President-Secretary-Treasurer, and the six Vice-Presidents.''

Section 17 reads in part:

''The Canvassing Board shall compile the votes cast by each Union for the respective candidates, and a clear majority of all votes cast at such an election shall be necessary for the election of an officer.''

Section 21 defines the powers and duties of the International president-secretary-treasurer. Among other functions he shall ''decide all constitutional questions, subject to an appeal to the International Executive Board, whose decisions can, if not satisfactory to the aggrieved, be appealed from to a popular vote of the membership of the International Union, which decision shall be final.''

Section 24 provides that ''the International President-Secretary-Treasurer shall keep a roll of all members of the International Union, with age, number of card, date when initiated, together with a roll of all members expelled, suspended, withdrawn, etc.''

Section 30 requires the International president-secretary-treasurer to issue an official journal and to give same free of charge to all members of the International Union. Section 36 requires all applications for membership to be sent to the International office where a record of the age and date of initiation shall be made. In Section 45 the International Union ''guarantees its moral and pecuniary support to all its members in difficulties which may arise between them and their employers. * * * The assistance shall be three dollars ($3.00) per week.''

Section 48 provides that "every difficulty involving more than 25 members shall be submitted at once by the International President-Secretary-Treasurer to a vote of all Local Unions; and a majority of those having voted, approving the same, he shall proceed as the Constitution directs."

Section 55 deals with sick benefits payable to members of the International Union, and under Section 68 any member of the International Union taken sick while traveling shall be entitled to all benefits under Section 55 by depositing his or her card with the union under whose jurisdiction he or she is. Other provisions of the constitution in which individuals are referred to as members of the International Union could be cited, but the foregoing excerpts and references are sufficient to show that the word "members" throughout the constitution refers to individuals and not to local unions.

Not until the entry of the judgment making the T. W. I. U. a party defendant was the contention made that any vote taken under Section 3 of the constitution must be by local unions as units rather than by individual members. Section 21 of the constitution clothes the International president-secretary-treasurer with power to decide all constitutional questions, and he construed Section 3 of the constitution as providing a referendum vote of the individuals comprising the union and requiring a two-thirds vote in the affirmative of those members voting on the question of holding a convention. In a notice sent to local unions on June 8, 1939, announcing the result of the referendum, he stated that 3,884 votes had been cast; that 1,996 members had voted "no" and 1,888 had voted "yes;" and that the convention issue had lost by 701 votes since two-thirds of the total vote cast was 2,589. After the institution of this action and throughout the proceedings prior to the entry of the agreed judgment, Evans and his six co-defendants, who constituted the International Executive Board of the T. W. I. U., conceded, in effect, that Section 3 of the constitution required a two-thirds vote of the individual members voting on the question submitted. The only important question in the case was whether or not Evans had tabulated the vote correctly, and he and his co-defendants agreed that the case should be referred to a special commissioner who should hear proof, retabulate the vote, and report his findings to the chancellor, who, on the basis of the commissioner's report, was to deter-

mine whether a convention should be called. All parties to the litigation were in agreement on the manner of counting the votes, and the defendants never intimated that the vote should be tabulated by units.

A careful consideration of the appellant's constitution and the uniform practices of those entrusted with its interpretation convinces us that the chancellor reached the correct conclusion, and the judgment accordingly is affirmed.

Whole Court sitting.