# Evans v. Humphrey, Judge.

Jan. 12, 1940.

Judges Thomas, Cammack and Tilford, dissenting.

James W. Stites for petitioner.

Churchill Humphrey for respondent.

Robert L. Sloss amicus curiæ.

OPINION BY JUDGE FULTON—Ordering writ of prohibition.

The petition for a writ of prohibition filed by E. Lewis Evans against the respondent, Hon. Churchill

Humphrey, Judge of the Jefferson Circuit Court, Chancery Branch, First Division, alleges that the petitioner is the duly elected and acting President-Secretary-Treasurer of the Tobacco Workers International Union and states the facts on which he relies for a writ of prohibition in substance as follows:

On July 15, 1939, an action was filed in the Jefferson Circuit Court by certain local unions of the Tobacco Workers International Union, on relation of certain members of the locals and by Edward H. Weyler, Secretary-Treasurer of the Kentucky State Federation of Labor against E. Lewis Evans, International President-Secretary-Treasurer of the Tobacco Workers International Union and the six vice-presidents comprising the International Executive Board, in which the plaintiff sought a mandatory injunction requiring the defendants to take the steps provided for by the constitution of the T. W. I. U. for calling and holding a convention. This action also sought the appointment of a receiver to take charge of the money, property, records and other affairs of the T. W. I. U. This case was tried before the respondent, Hon. Churchill Humphrey, Judge of the Jefferson Circuit Court, Chancery Branch, First Division, who entered a judgment in fifteen numbered paragraphs granting the relief prayed for as to the calling of the convention. By the twelfth paragraph of the judgment the matter of receivership was reserved. On appeal to this court the judgment was affirmed in Tobacco Workers International Union v. Weyler, 280 Ky. 355, 132 S. W. (2d) 754.

Pursuant to this judgment a convention of the T. W. I. U. convened in Louisville on October 23, 1939, and lasted approximately 10 days. At the first meeting of the convention a resolution was adopted directing the attorney for the T. W. I. U. to appear before respondent and dismiss the action. Pursuant to this resolution, or at least after its adoption, an agreed order of dismissal was entered, the concluding paragraphs of which read:

"Whereas, the aforesaid judgment has now been fully performed, with the exception of Paragraph 12 thereof providing that the matter of receivership is reserved;

"On motion of plaintiffs, by counsel, it is now hereby ordered that the above styled action is hereby dismissed at the costs of the defendants."

No further steps were taken in the action until after the adjournment of the convention on November 3.

On November 6 a second action was filed in the Jefferson Circuit Court against the petitioner, Evans, by the T. W. I. U. on relation of certain members constituting the Operating Board of Trustees of the T. W. I. U. and by these members individually, the actions being filed by attorneys who represented the plaintiffs in the first action. This latter action was removed by the petitioner to the Federal Court, where it is now pending. In that action it was alleged that the petitioner had been suspended from office and that the plaintiffs were constituted an operating committee to take over the assets and property of the T. W. I. U. The prayer of the petition was that a receiver be appointed to take over the funds and property of the T. W. I. U. from the petitioner and that he be enjoined from continuing to interfere with or obstruct plaintiffs from exercising the power which the petitioner formerly held as International President-Secretary-Treasurer of the T. W. I. U. and that the Lincoln Bank and Trust Company, which was made a party, be enjoined from paying out any funds of the Tobacco Workers International Union in its control except on the order of the receiver to be appointed.

On November 9 the respondent, without request and on his own motion, called together in conference the attorneys for the plaintiffs in both actions and the attorneys for the petitioner. A portion of this conference was reported by the official stenographer, the reported portion being this statement dictated by the respondent:

"The Court: This situation has disturbed me, and for that reason I have asked counsel for both sides to meet with me, and they were present, as set forth in the caption hereto.

"I want to preface my remarks by saying that I have only admiration and envy for the practice of the case on the part of the defendant Evans, and I hope that when I resume the practice of law I can do as well.

"However, I am personally of the opinion that the defendant, Evans, may, by fraud, have undertaken to evade the orders of this particular court. Frankly, as long as I preside over this court I intend to invoke the Napoleanic maxim of never giv-

ing an order that cannot be carried out, and enforcing every order that is given.

"I have reason to suspect that the defendant Evans induced plaintiff to dissolve injunction in order to evade the court's order for a fair convention. This may be so, or it may not be so. If it is so, the court proposes, if it can, to recapture jurisdiction—not of the new case, but of the old one— The order for dismissing the suit is not sixty days old. Whether this court has the power to revoke that order and reinstate the original judgment, I do not know, but the court is going to suggest that inquiry be made and the court will next Tuesday, November 14, 1939, entertain a motion to revoke the order dismissing the original injunction, and reinstating the order. The court does not direct this to be done—but says that it will do so.

"Now, the practice will have to be very exact so that the defendant may be deprived of no rights in the premises—either in the right of removal if this court by reinstating the old case is actually starting a new one—or in the right of review if the court errs in ruling, or presumption, if it exceeds its jurisdiction. Motion will be made with an accompanying statement, and the statement will be subject to challenge as to fact by affidavit or oral proof, such as counsel may agree on, and will set the fraud out if it is true.

"The fraud I allude to is this: I think it is possible—I don't say probable but possible—that defendant Evans got this suit dismissal knowing at the time that at a time when he was not under its jurisdiction, by covin and by skill in parliamentary law equal to covin—he could defeat the wishes of the majority of the convention. If the court does set aside the order and reinstate the judgment and the plaintiff wishes further relief at the foot of the decree it will proceed by supplemental petition, so that the record may disclose, and leave open to the defendant, any form of review or correction that it has."

It is alleged in the petition for the writ of prohibition that the dictated statement above was not all that was said at the conference.

Following the conference and the suggestion of re-

spondent, the plaintiffs in the original action served notice on the petitioner that on November 28 they would make a motion to set aside the agreed order dismissing the action and that in the event the motion was sustained they would further move for the appointment of a receiver for the T. W. I. U. At the same time three intervening petitioners, members of the union, served notice that they would move the court to permit them to file an intervening petition making them parties to the action.

After notice of these motions the petitioner filed a motion that the respondent vacate the bench and in support thereof filed an affidavit setting out a history of the litigation and the action of respondent in calling and holding the conference referred to. The substance of the remarks of respondent contained in the dictated statement were set out but the point blank charge is made in the affidavit that the respondent stated "That he was of the opinion that this affiant had been guilty of fraud in securing the dismissal of the action and had violated the injunction granted in said action."

The respondent overruled the motion for him to vacate the bench whereupon the petitioner filed this petition for a writ of prohibition. The case is now before us for decision on the allegations of the petition and the response thereto, which response does not controvert any of the allegations of the petition.

At the outset we are confronted with the question of law as to whether or not this is the character of case in which a writ of prohibition may rightly issue. It is contended in the amicus curiæ brief, filed by counsel for the intervening petitioners, that it is not, since the petitioner has an adequate remedy by appeal.

It is now well settled that writs of prohibition will issue from this court to prohibit inferior courts in two classes of cases 1) Where they are threatening to proceed, or are proceeding, in a matter in which they have no jurisdiction and there is no remedy through an application to an intermediate court, and 2) Where, although proceeding within their jurisdiction, they are exercising or about to exercise it erroneously and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result to the applicant if they should do so. Duffin v. Field, Judge, 208 Ky. 543, 271 S. W. 596; Litteral v. Woods, Judge, 223 Ky. 582, 4 S. W. (2d) 395; Tompkins et al. v. Manning, Judge, 205 Ky. 327, 265 S. W. 830.

It is urged for the petitioner that this case falls within the first class because the respondent has no jurisdiction to set aside the agreed order of dismissal. We cannot accede to this contention, however, because the setting aside of an order of dismissal in the Jefferson Circuit Court within 60 days after its entry is plainly within the jurisdiction of the court. The court's action in setting aside its order, if it did so, might or might not be erroneous, but erroneous action is not equivalent to a lack of jurisdiction.

It is urged for the petitioner, however, that even though the respondent might be acting within his jurisdiction in attempting to set aside the agreed order of dismissal, nevertheless he should have vacated the bench on the filing of the affidavit and his attempt thereafter to hear the motion to set aside the order would be erroneous and that great and irreparable injury would be done the petitioner and that he has no adequate remedy by appeal.

It seems to us that the petitioner is correct in this latter contention because one of the ostensible and principal purposes behind the proceedings is to have a receiver appointed for the T. W. I. U. The new action, filed in the circuit court and removed to the Federal Court, was largely for this purpose and the notice given to petitioner that a motion would be made to set aside the order of dismissal also notified him that a motion for a receiver would be made. Paragraph 12 of the judgment in the action, as heretofore mentioned, reserved the question of receivership. While the appointment of a receiver may not be the sole end in view in making the motion to set aside the agreed order of dismissal since it is perfectly evident that the respondent intends to go into the question of whether or not the petitioner was guilty of fraud in the convention such as amounted to a violation of the spirit of the injunction commanding him to hold the convention, nevertheless the appointment of a receiver might be ordered by respondent and is undoubtedly one of the main purposes behind the motion. Since the petitioner alleges that he is the President-Secretary-Treasurer of the union, the appointment of a receiver to take charge of its affairs would necessarily result in a suspension of his activities as principal officer of the union. As a consequence he would be completely stripped of control of the administration of his office pending an appeal, since by Section

298 of the Civil Code of Practice an order appointing a receiver cannot be superseded. In these circumstances, if the respondent ought to vacate the bench but erroneously refuses to do so and proceeds with the trial and this trial culminates in the appointment of a receiver, it seems clear that the petitioner would have no adequate remedy by appeal from this erroneous action and would suffer great and irreparable injury. An indefinite suspension of his control of the union might well cause irreparable injury both to himself and the union. We therefore feel that this is the character of case justifying the issuance of a writ of prohibition if the facts are such that the respondent should have vacated the bench.

In an opinion delivered by him overruling the motion to require him to vacate the bench the respondent stated the question involved as follows:

"Did I prejudge this case or did I not; that is the question. I am of the opinion that I, as presiding judge in this case, merely suggested a practice; and that, as judge, I did not prejudge the case. I think I have a right to suggest a practice if I do not prejudge the case."

It is contended that respondent cannot over the petitioner's objection, with propriety, sit in judgment upon the practice he himself has suggested. This contention, in the abstract, appears to us to be untenable. We have little question that to prevent a miscarriage of justice a question or method of practice may sometimes be suggested by the judge presiding over a cause without disqualification to preside in the cause thereby being visited upon him though, undoubtedly, this power should be very sparingly used—the judge may not act in the dual capacity of judge and advocate. But judges are not mere umpires—they are sworn to administer justice and to that end should see that their decrees are carried out. If the respondent had only suggested a method of practice to prevent the thwarting of his injunctive order, unaccompanied by an expression of opinion as to the merits, he was well within his rights. If he has prejudged the case, or if his actions were such as to furnish the petitioner just grounds for suspicion of his impartiality, he should not continue to preside.

Judge Humphrey, in his response says: "This is a border line case, I know. I have gone the limit." We agree with him that it is a border line case but fear that

he stepped slightly beyond the limit of judicial action into the realm of advocacy. His suggestion of the practice to be pursued, accompanied by statements that might reasonably be construed to indicate that he had acquired a personal opinion that the petitioner had procured the order of dismissal by fraud, one of the very matters to be in issue on the trial of the motion to set aside the order, appears to us to furnish the petitioner and his counsel with a solid basis for apprehension that pride in advocacy might well prevent the respondent from administering even-handed justice.

The suggestion of practice by the respondent was accompanied by language which approaches perilously near to the expression of a fixed opinion, even if we consider only the expression contained in the reported statement at the conference. It is difficult to gather from that reported statement whether or not an opinion is expressed. Reasonable minds would no doubt differ as to this. But it must not be forgotten that it is alleged that the reported statement did not contain all that was said by the respondent at the conference and that the affidavit filed in support of the motion to vacate charges specifically that the respondent stated he was of the opinion that the petitioner had been guilty of fraud in procuring the order.

We have no desire to extend the operation of a writ of prohibition so as unduly to hamper a trial judge in the discharge of his duty or to restrict the action of a chancellor motivated only by a zealous desire to prevent a thwarting of his decree, but after careful consideration of all the facts of the case we have reached the conclusion that it is to the best interest of the administration of justice that the respondent should not continue to preside in the case. We are inclined to believe that Judge Humphrey could continue to preside impartially notwithstanding any prejudging he has done, if he has done so. His service as chancellor has unmistakably revealed his integrity and sincerity of purpose. We are impelled to the conclusion reached by the conviction that enough transpired at the conference to furnish the petitioner just ground for suspicion that he would not receive a fair trial at respondent's hands. It was said in Kentucky Journal Publishing Company v. Gaines, 139 Ky. 747, 110 S. W. 268, 272, 33 Ky. Law Rep. 402:

"It is but the utterance of a legal platitude to say

that it is of the utmost importance that every man should have a fair and impartial trial of his case, and that to secure this great boon two things are absolutely essential—an impartial jury, and an unbiased judge. But we go further and say that it is also important that every man should know that he has had a fair and impartial trial, or, at least, that he should have no just ground for suspicion that he has not had such a trial."

Little, if any, damage is likely to be done as a result of the stepping aside of the respondent in favor of another judge. While he is familiar with the litigation, the record is not long and an accurate knowledge of it may readily be acquired by the judge who presides. The petitioner has a large following in the labor union. To require him to submit to trial at the hands of a judge whose impartiality he has just grounds to suspect might well tend to lessen public confidence in the judicial system.

A writ of prohibition will issue prohibiting respondent from further presiding in the action.

The whole Court sitting.

Judges Thomas, Cammack, and Tilford, dissenting.

Judge Thomas (dissenting).

The writer, with Judge Cammack and Tilford, agrees with the majority opinion in its circumscribing declarations of this court's authority to entertain original proceedings filed therein, under the authority conferred by Section 110 of our Constitution. But they differ from the majority opinion, as expressive of the conclusions of the majority of the members of the court, upon the legal effect of what respondent did, and upon which his alleged disqualification is sought to be established. To our minds he did nothing beyond what he had the right to do in the performance of his duty in the bona fide enforcement of his rulings. He still had jurisdiction of the order dismissing the case referred to in the opinion, the judgment in which was affirmed by this court and which had purportedly been executed; thereby furnishing the ground for the dismissal in so far as the injunctive relief was concerned.

Respondent had received information that possibly there had been no bona fide compliance with the injunc-

tion order. He did not on his own volition seek an investigation of that matter, but suggested that if any litigant desired an investigation he would sustain a motion therefor, and which suggestion was followed by a motion being made for that purpose. This action seeks to prevent him from presiding at the hearing of that motion upon the ground that what he did, as above outlined, disqualified him so as to create at least constructive bias and partiality.

We are unable to reach any such conclusion, and for which reason it is our opinion that the demurrer filed by respondent to the petition herein should have been sustained.