## Commonwealth ex rel. Meredith, Attorney General, v. Murphy.

Oct. 15, 1943.

Hubert Meredith, Attorney General, for relator.

Barbour & Bassman for respondent.

OPINION BY STANLEY, COMMISSIONER—Granting writ of prohibition.

This is an original proceeding in this court by the Commonwealth, on relation of the Attorney General, against Honorable Ray L. Murphy, as Judge of the Campbell Circuit Court and individually, to have a writ issued prohibiting him from acting in his official capacity

in a case pending in that court. Kentucky Constitution, Section 110; Kentucky Revised Statutes 21.050.

The Attorney General, as relator of the Commonwealth, filed in the Campbell Circuit Court a petition against numerous parties seeking to abate an alleged series of public nuisances, consisting of wide-spread operation of gambling houses, accompanied by violations of other laws. Many county and city officers are defendants therein and charged in substance with conspiring with and aiding and abetting their co-defendants in maintaining the nuisances. The circuit judge of the local district being absent, under authority of Section 273, Civil Code of Practice, Judge C. D. Newell, of the 19th Judicial District, on an ex parte motion issued a restraining order on September 20th temporarily enjoining the defendants and directing the sheriff of Campbell County and other peace officers to forthwith enforce all laws of the Commonwealth, particularly those condemnatory of gaming, and to enter upon the described premises and seize all equipment and contrivances generally used in gaming, especially slot machines, roulette wheels, and other named devices. Judge Newell set the case for a hearing in the Campbell Circuit Court on the morning of September 27th. Section 276, Civil Code of Practice.

On September 24th the plaintiff filed an amended petition making several other individuals and officers parties defendant. One of them is Judge Murphy. The amendment adopts the charges contained in the original petition, and, with reference to Judge Murphy, particularly alleges in substance that he had encouraged, aided and abetted his co-defendants in operating the nuisances and in violating the law by repeatedly visiting and patronizing one or more of the places described during his incumbency of office, has had full knowledge of the facts and unlawful conduct stated, and indicated his approval thereof. It is charged that he had led his co-defendants to believe and understand that he was "their friend and would afford them protection" thereby and by his failure to properly charge or cause his grand juries to return indictments for the numerous violations of the law they had committed as described. It is further alleged that his described acts of omission and commission had caused them to feel secure and that they "tend to and do further effectuate the conspiracy of the defendants named in the petition herein." The relief prayed in rela-

tion to Judge Murphy is that he be enjoined from doing such things and "from aiding, abetting, assisting or encouraging" the maintenance of the described nuisances. The amended petition, like the original or primary one, was duly verified by Mr. Meredith, the Attorney General.

The next day the Attorney General, as relator of the Commonwealth, filed this proceeding in the Court of Appeals. The petition describes the case pending in the Campbell Circuit Court and the making of Judge Murphy a party defendant therein. It states the order of Judge Newell setting the case for trial on a motion for a temporary injunction on the morning of the 27th, and that certain officers, in obedience to that order, had seized gambling equipment and paraphernalia of the value of $100,000 or more and stored the same, all at considerable expense to the Commonwealth. Additional allegations are made in the petition filed in this court concerning Judge Murphy's connection with the alleged nuisances. It is further alleged that, notwithstanding these things and the fact that Judge Murphy is a party defendant in the suit and has a material personal interest in the outcome and every step and motion to be taken therein, he intends and purposes to preside and try the case and had declared that he would do so in order to protect two of his friends and Leo Livingston, the Chief of Police of Newport, one of the defendants. It is charged that unless restrained and prohibited by this court the defendant will preside in the case and decide every point adversely to the Commonwealth, which would suffer irreparable injury and damage, and for which it has no adequate remedy at law or in equity. It states that the Commonwealth intends to proceed under the provisions of Chapter 436 of the Kentucky Revised Statutes, particularly Section 436.280, to forfeit the seized property, and charges that unless restrained by this court the defendant will release the property and the state's right to use it in evidence and to confiscate it would be lost and defeated. It is further charged that by reason thereof the Commonwealth will sustain additional irreparable injury in its efforts to enforce the laws and suppress the wholesale commission of the nuisances and crimes described. There are other severe allegations in this petition, but these are sufficient for the purpose of deciding the case.

On the ex parte motion we issued a temporary writ of prohibition restraining the defendant from presiding

at the hearing or trial on the morning of the 27th. In due course the plaintiff has filed a motion for the issuance of a permanent writ of prohibition, and the defendant, Judge Murphy, has filed general and special demurrers and an answer. A transcript of the record in the case pending in the circuit court is filed with the answer as an exhibit. Judge Murphy categorically denies each and every allegation and charge respecting his activities and associations with other parties named as defendants in the suit in the circuit court, and also denies that he expressed any opinion or made any declaration in relation to the case and its decision. He denies having any material or personal interest in the result of the case or any wrongful intent or purpose to cause loss or injury to the Commonwealth in the manner alleged. He does not traverse the allegation that he will preside and try the case notwithstanding he has been named a party. He avers that he was named a defendant in the suit for the sole purpose of defaming and disqualifying him from trying it. He alleges that shortly after the filing of the original petition an attorney associated with the Attorney General in its prosecution had suggested that he sua sponte disqualify and that he had refused to do so, with the suggestion to the attorney that the plaintiff might file a motion and affidavits in the regular way to have him vacate the bench. Instead, he alleges, the amended petition was filed naming him a party defendant, with the public declaration of the Attorney General and his assistants that it was for the purpose of preventing him from sitting in the case.

We have a delicate situation. The Attorney General of the State has alleged some facts and some conclusions charging the Circuit Judge with being a party to a conspiracy to maintain public nuisances in the form of gross violations of the criminal laws of the state and with serious malfeasance and misfeasance in office. The defendant, as we have said, categorically denies those charges and pleads in effect that his good name and integrity have been wrongfully defamed by a sham pleading. Quite naturally he resists the effort to disqualify him upon those grounds. It is as abhorrent, we have no doubt, to the respondent as it is to the public that any man should exercise any judicial function or sit in judgment in his own case. Nevertheless, he feels justified in declining to yield or to refrain from performing his duty because he feels the accusations have not been made in

good faith and have no foundation in fact. On the other side, to ascribe to the chief attorney of the Commonwealth evil motives and bad faith is in and of itself a serious accusation. We must presume that both petitions have been filed in good faith and that the Attorney General did not violate his oath of office or falsely swear to the pleadings.

It has been held that a judge may not be disqualified by being a merely nominal party to a suit. 33 C. J. 994. And it may be readily agreed that the filing of a sham or frivolous pleading in which the presiding judge of the court where the case is to be tried is made a party for the sole purpose of disqualifying him is reprehensible and should not be countenanced or the purpose allowed to be accomplished. But a pleading is not deemed a sham or frivolous merely because it would probably be held bad on demurrer. It is one so palpably and manifestly false on its face as to leave no room for doubt thereof, and of such a character that the court on a mere inspection may pronounce it to be indicative of bad faith in the pleader. 49 C. J. 83. The question is: Is it right that a judge made a party by any pleading should determine its character?

In Younger v. Superior Court of Santa Cruz County, 136 Cal. 682, 69 P. 485, 486, relied on by the defendant, the petition for a partition of land made the presiding judge of that court a party defendant but merely alleged that he claimed to have some interest in the land though in fact he had none. The judge of his own volition and without notice entered an order denouncing the allegation as false and the complaint as having been filed for the sole purpose of disqualifying him from acting as judge. The order struck the complaint from the files. In passing on a writ of certiorari for the purpose of reviewing that action, the Supreme Court of California stated that a litigant and his attorney making a judge a party to a suit only to disqualify him should be dealt with for contempt, but bad faith would not be presumed. It however, added: "Certainly the judge has not the power to pass upon his own qualification without a hearing, and to determine that he has no interest in the case, without giving any opportunity to any one to show that he has such interest. * * * The question as to whether or not the judge is a party, made so in good faith, or whether or not he is interested, should be determined

upon notice, and after a hearing, so that the record can be preserved, and the matter passed upon in this court, in case it becomes necessary. And where the judge is made a party upon proper allegation he cannot arbitrarily determine that he is not a proper party, nor that he is not interested. In proceedings for contempt the court cannot deprive parties of all redress in the ordinary course of law, nor of the right to have the courts pass upon questions properly presented. It must proceed according to the law of the land, and not condemn without a hearing. It must proceed from inquiry, and render judgment only after trial.''

The Supreme Court set aside the order of the trial judge striking the pleading from the record. The decision seems to be rested on the ground that the judge had acted without notice or giving the plaintiff a hearing. Although it condemns the idea of a judge sitting in his own case, it indicates that he might have done so in a legitimate hearing to determine his interest. The case does not help us for we are persuaded no judge should determine his own interest or non-interest.

While it may be that the petition in the circuit court as it relates to Judge Murphy as a defendant is legally insufficient to state a cause of action—a question which, obviously, we do not decide—it cannot be regarded as a sham or frivolous pleading. If we had before us only the legal sufficiency of the petition filed in this court for the issuance of a writ of prohibition to stop Judge Murphy from sitting in the case below, we would have little difficulty in concluding that such a writ should issue. That, of course, would be without any reflection upon Judge Murphy's integrity, for it would be only the technical conception upon which the efficacy of a demurrer to a pleading is measured, namely, the assumption of the truth of the allegations for the purpose of testing it. But we have before us also the answer containing a denial of all the allegations of the petition and affirmative charges that the making of the Judge a party to the suit has not been in good faith and was for the sole purpose of disqualifying him. And these allegations have been controverted of record. Ordinarily, the joining of issue would require the hearing of evidence to determine the matter. But there was an emergency and it was necessary that an immediate decision by this court be made since the temporary restraining order issued by Judge

Newell expired by operation of the law on the next day, ten days after its issuance. Section 276, Civil Code of Practice. Further action had to be taken in the circuit court, not only in relation to the abatement of the alleged nuisances but to the contraband equipment, stated to be held as evidence and for the purpose of having it confiscated and forfeited by independent judicial proceedings. The situation creates difficulty. In order that the status might be maintained and this property preserved, one or the other of two actions must have been taken by this court. We had either to set aside our temporary writ of prohibition and permit Judge Murphy to preside at the hearing of a motion to extend or grant a temporary injunction on the next day, or to prohibit him from serving and appoint a special judge for the purpose.

The verified amended petition contains the essential elements of an affidavit necessary to have the Judge vacate the bench, KRS 23.230, and the defendant, himself insists that was and is the sole purpose of the instrument. Under the unusual circumstances and need of emergent action, should we not cut through form and regard substance and reality?

This is not an ordinary but an extraordinary case and condition. First, the proceeding in the Circuit Court, instituted by the sovereign State of Kentucky, through its chief attorney and law officer, describes under oath conditions of a wide-spread and riotous disregard of the gaming laws of the state and the maintenance of public nuisances in connection therewith, and charges substantially all of the judicial and law enforcement officers of the county and three cities therein with conspiracy, collusion and participation. Secondly, the chief judicial officer upon whom rests the duty of trying the case has been charged, under oath, in substance and effect, to have such interest and favoritism that for him to exercise any judicial function connected with it would bring the court into disrepute no matter whether he be ultimately vindicated or not. For that unfortunate result to ensue, it is not necessary that that interest should be of a kind or nature that would attach any guilt or liability in any degree, conspirative, collusive or otherwise. The charges are sufficient and grave enough to invoke the law which holds: ''Every litigant, including the State, is entitled to nothing less than the cold neutrality of an impartial judge, and the law maintains that no

judge shall preside in a case in which he is not wholly free, disinterested, impartial and independent." 30 Am. Jur., Judges, Section 53.

Section 110 of the Constitution vests in the Court of Appeals the "power to issue such writs as may be necessary to give it a general control of inferior jurisdictions." The statute is in the same language. KRS 21.050. Limitations on the use of this power have been established by the court as being sufficient in the ordinary cases. The power itself is quite plenary. It will be exercised when it appears that substantial injustice will eventuate by any proposed action by an inferior court and the petitioner will have no adequate remedy, as by an appeal. We have uniformly ruled that writs of prohibition will be issued to prohibit inferior courts in two classes of cases, namely: "(1) Where they are threatening to proceed, or are proceeding, in a matter in which they have no jurisdiction and there is no remedy through an application to an intermediate court, and (2) Where, although proceeding within their jurisdiction, they are exercising or about to exercise it erroneously and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result to the applicant if they should do so." Evans v. Humphrey, 281 Ky. 254, 135 S. W. (2d) 915, 917.

Out of jealous regard for impartiality in the administration of justice and the concept that a litigant should feel that he will have a fair and impartial trial, it was long ago determined that statements of fact in an affidavit for the removal of a Judge must be accepted as true for the purpose of determining the question, and the Judge is not permitted to challenge them. Lester v. Commonwealth, 250 Ky. 227, 52 S. W. (2d) 469; Williams v. Howard, 270 Ky. 728, 110 S. W. (2d) 661. This is never regarded as a forced confession on the part of the Judge of the truth of the charges. If they are false, the affiant may be prosecuted for false swearing, or in some instances punished for contempt of court. When a sufficient showing is made in support of a formal motion to vacate the bench and the Judge declines to step aside in a civil case, his action will not ordinarily be considered in an original proceeding of prohibition since the ruling may be reviewed on appeal. If it is found that the affidavit or objection was sufficient and the judge should

have recused himself, the judgment is deemed erroneous and reversed. Stamp v. Commonwealth, 195 Ky. 404, 243 S. W. 27; Ledford v. Hubbard, 236 Ky. 373, 33 S. W. (2d) 345. If a Judge is disqualified to act by reason of personal interest and can profit by his own decision, his judgment is void. Coquillard Wagon Works v. Melton, 137 Ky. 189, 125 S. W. 291; 33 C. J. 1071. Thus the aggrieved party has an adequate remedy by a further proceeding or appeal. But where the Commonwealth makes an application for such a writ to prohibit a Judge from trying a criminal prosecution, we issue it upon a sufficient showing because if the judgment should be adverse to the commonwealth and the defendant be found not guilty, there is no remedy. Smith v. Ward, 256 Ky. 13, 75 S. W. (2d) 538; Commonwealth v. Howard, 267 Ky. 287, 102 S. W. (2d) 18. The proceeding in the Campbell Circuit Court by the Commonwealth is in its nature quasi criminal and the conditions presented are not greatly different from those existing in a direct prosecution of violation of the criminal laws, in which class of cases, as we have stated, we exercise the power to prohibit the Judge accused of partiality from trying the case. Should the court rule adversely to the commonwealth (as it is pleaded he will) and it be later determined that he was disqualified, there is no doubt that irreparable injury will have resulted, viz., the alleged nuisances continued unabated and the seized contraband lost. While there could be an appeal, that remedy would be inadequate.

Because of the unusual situation presented in the case at bar and the need for immediate action, a permanent writ issued on October 5th prohibiting the defendant from trying the case and time was taken for the preparation and filing of this opinion.

Whole Court sitting.

Chief Justice Fulton and Judge Rees, dissenting.

Chief Justice Fulton dissenting.

I am unable to subscribe to the majority opinion because it seems to me to do violence to settled, sound and salutary principles of law and rules of procedure.

The established procedure to protect a litigant against having his cause presided over by a biased judge is for the litigant to file an affidavit stating facts sufficient to disclose such bias and make a motion for the judge to vacate the bench, the facts stated in such an

affidavit being considered as true for the purposes of the motion. The majority opinion concedes this, but holds that the amended petition making Judge Murphy a party would be considered as taking the place of such an affidavit. The opinion impliedly holds that if the amended petition were a sham pleading no such consideration would be accorded it, but then attempts to demonstrate that it was not a sham pleading. With this conclusion I am violently at odds. The allegations of the amended petition, the substance of which is stated in the majority opinion, fall so far short of stating a cause of action that it unduly discredits the legal ability of the Attorney General and shrewd counsel associated with him to accuse them of believing that the amended petition even remotely smacked of stating a cause of action against Judge Murphy.

Our circuit judges are entitled to be accorded the respect and deference of having the question of their qualification to preside over the trial of cases raised in an orderly manner, according to established procedure. We should be loath to set the seal of approval upon efforts to disqualify them by the ruse of making them parties to litigation. My aversion to such a practice is so strong that I am unwilling to agree with the position taken in the majority opinion that the amended petition should be treated as an affidavit in support of a motion for Judge Murphy to vacate, even though I am inclined to agree that the allegations, had they been made in the course of recognized procedure, would have been sufficient to disqualify him. And, in this connection, it should be noted that Judge Murphy's response states that he refused to disqualify because of the ruse adopted in making him a party and because he was not given an opportunity to vacate the bench in accordance with recognized procedure.

The statement in the majority opinion that this is "not an ordinary but an extraordinary case and condition" seems to set the precedent that we will have one set of laws for what this court regards as ordinary cases and another set for what we regard as extraordinary cases. The reasoning is specious and the precedent dubious.

I think no consideration should be accorded what I regard as the obviously sham pleading making Judge Murphy a party.

But, aside from the reasons enunciated, the decision departs squarely from a salutary and firmly fixed rule in regard to the issuance of writs of prohibition by this court.

I refer to the rule that a writ of prohibition will not issue against a judge acting within his jurisdiction when there is an adequate remedy by appeal. The rule is recognized in the majority opinion, which quotes from Evans v. Humphrey, 281 Ky. 254, 135 S. W. (2d) 915. A vast number of cases have announced this rule—it has been as unchangeable as the laws of the Medes and Persians in the face of continuing assaults upon it.

After recognizing the rule, the majority opinion refers to cases such as Smith v. Ward, 256 Ky. 13, 75 S. W. (2d) 538, in which we held that prohibition will issue to prevent a circuit judge, whose bias has been properly disclosed, from presiding over the trial of a criminal case because the Commonwealth has no remedy by appeal, and effort is made to justify the conclusion of the majority by drawing an analogy to those cases when there is no analogy.

To support the supposed analogy the opinion closes with the erroneous statement that while there could be an appeal, on which could be raised the question of Judge Murphy's qualification if he erroneously presided, such an appeal would not afford an adequate remedy and irreparable injury will have resulted from the nuisances being continued unabated and the seized contraband lost. This statement ignores the fact that the Commonwealth could supersede any adverse judgment rendered on final hearing, thereby preventing a restoration of any of the seized contraband. And if Judge Murphy should preside over the hearing of the motion for a temporary injunction and rule adversely to the Commonwealth, Section 296 of the Civil Code of Practice permits the Commonwealth to apply to a judge of this court for an order directing the circuit judge to issue the temporary injunction and further provides that the circuit judge shall provide in any order of dissolution made by him that it shall take effect in a reasonable time thereafter not exceeding 20 days, during which time motion may be made before a judge of this court for the injunction. If Judge Murphy deliberately and wilfully attempted to override the plain mandate of the code by refusing to suspend the operation of any order that might be made by him re-

storing the seized contraband, then the processes of this court would be open to the Commonwealth to prohibit him, since there would then be no other adequate remedy.

To assume that Judge Murphy would adopt such a course would be to attribute to him not only bias but positive corruption. I know of no instance, and never heard of one, in which a circuit judge adopted such a course. It is unthinkable. I do not believe the majority would let their imaginations be thus unrestrained in conjuring up the absence of an adequate remedy to the Commonwealth. I think they have merely overlooked the plain, adequate and complete remedy available to review any decision Judge Murphy might render.

Certainly, no irreparable injury can result from the alleged nuisances continuing during such time as would be required to secure a ruling from a judge of this court on a motion for a temporary injunction or during such time as would be required to secure a decision on appeal. The statement to this effect in the majority opinion is a novel and unique one—it is what the members of this court familiarly refer to as a "rabbit" and I do not propose to chase the rabbit any further.

It is obvious that the Commonwealth has a plain, adequate and complete remedy to correct any adverse ruling by Judge Murphy if he should erroneously preside in the case after the question of his qualification so to do was properly raised. This being true, I think we should make no exception of this case from our firmly established rule that prohibition will not issue from this court where this is an adequate remedy by appeal or otherwise.

Judge Rees concurs in this dissent.