## Allen Miller and Delilah Miller v. Commonwealth.

(Decided June 8, 1920.)

## Appeal from Perry Circuit Court.

1. Criminal Law—Homicide — Instructions—Self-Defense.—An instruction in a homicide case on the subject of self-defense in place of leaving it to the jury to say from the evidence whether the defendant believed or had reasonable grounds to believe that he was in such danger as authorized him to shoot and kill, should advise the jury that the right of self-defense depended on what the defendant believed and had reasonable grounds to believe at the time the fatal shot was fired.

2. Criminal Law—Instructions—Defense of Home.—The law does not authorize a person to take the life of another in defense of his property or merely because such other is forcibly trespassing on his premises. To excuse a homicide under circumstances like this, it is essential that the shooting and killing should be believed by the person accused necessary or reasonably necessary to protect himself or his family from danger.

3. Trial—Witnesses—Juror May Queseion.—During trial or after case has been submitted witness may be recalled and examined by juror.

HOGGE & JOHNSON and F. J. EVERSOLE for appellants.

CHARLES I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

The appellants, Allen Miller and Delilah Miller, under an indictment charging them with the murder of Sam Combs, were found guilty of manslaughter and the punishment of each assessed at a term in the penitentiary of 21 years.

The evidence in the record leaves in considerable doubt the circumstances surrounding the death of

Combs, who one evening after supper left his home and the next morning was found dead at the house of the Millers, who are husband and wife. The only person who testified as to the manner in which Combs came to his death was Delilah Miller, and she said that Sam Combs, who lived in the same neighborhood was well known by her; that on the night he was killed she and a little girl about six years old were occupying alone the cabin in which she and her husband lived: that her husband about three or four o'clock on the afternoon of that day went to the house of his brother, John Miller, where he stayed all night, leaving no person at his home except herself and the little girl; that she was awakened about two or three o'clock in the morning by a "pounding" on the door of the room in which she and the child were sleeping; that she did not know who it was until she asked, and the person said: "Bad Sam Combs, by God, the worst God d— s— of a— ever seed this place," and I says "Get away from here; you have no business here," and he says "By God I make business wherever I go," and he pounded on the door and I got up and got the gun and held the gun up in my hand and the door flew open and I heard something burst in the floor and as quick as I discovered him, I shot and I dropped the gun down on the bed and grabbed the little girl up and went out the door barefooted and in my night clothes, as quick as I could get out and went down to Sallie Miller's."

She further said that he prized the door open and while there was no light or fire in the room, there was enough light from the door and window to enable her to discover that it was a man, but she only knew who it was from what he said; that as soon as he came in the door she shot as quick as she could with a single barrel shot gun.

This is all the evidence as to the circumstances surrounding the death of Combs, nor does the record disclose why or how he happened to be at the house of Miller at the time he was killed. The fact is that the evidence is so confusing and contradictory as to leave involved in doubt every material fact connected with the case, except that Sam Combs was shot and killed during the night at the house of Miller.

Allen Miller testified that he was not at home during the night and did not know anything about the tragedy

until late the next morning when he was told what happened by some people that he met.

Nancy Miller, a girl about 14 years old and a niece of Allen Miller, testifying for the Commonwealth, said that she went to Allen Miller's house in the afternoon of the day before Combs was killed and remained in the house all night, that she retired early and went to sleep, but about ten or eleven o'clock was awakened by a noise in the room in which she was sleeping, and saw Delilah Miller, who was sleeping in the bed with her, get up and open the door and let Sam Combs in the room; that Allen Miller was at home and in the room where they were sleeping, and that when Sam Combs came in he and Allen Miller sat in the room and she saw them drinking whiskey; that presently she went to sleep and was next aroused by the firing of a gun and saw Allen Miller standing near the door holding Sam Combs; that Delilah Miller was standing over in one corner of the room; that she did not hear anything said at this time, but got up at once and went out of the house to Sallie Miller's, a neighbor, who lived near by.

This girl was the principal witness for the Commonwealth in connection with two or three other witnesses, who testified to threats made by Allen Miller that he would kill Combs.

It will be noticed that Delilah Miller testified that she shot and killed Sam Combs, but it appears probable that the jury may have believed that he was killed by Allen Miller and that his wife, Delilah, assumed the blame in order to exonerate her husband from liability for the crime. We may further assume that the jury believed the story told by Nancy Miller, and inferred from the circumstances of the case that Combs, while drunk, was shot and killed by Allen Miller with the advice and assistance of his wife. But, however this may be, the direct and circumstantial evidence in the case was as we think sufficient to justify the jury in returning the verdict, although, as we have said, the evidence is so contradictory and confusing as to leave us in great doubt as to the truth of the case. The jury, however, saw and heard the witnesses testify and were doubtless acquainted with them, and we do not fell warranted in holding, on the record before us, that their finding should be set aside and a new trial ordered on the ground that there was not sufficient evidence to support it.

On this appeal, it is urged that the court committed error in the instructions given to the jury and in permitting Sallie Ann Miller to be recalled at the request of the jury and examined by one of the jurors after the case had been argued and submitted.

There is no objection to the instructions on the subject of murder and manslaughter, but instruction No. 6, on the subject of self-defense, is criticised because it is said that this instruction left to the jury to say whether the Millers, or either of them, at the time Combs was killed, were in danger of death or great harm at his hands, in place of telling the jury that they should acquit if they believed that the Millers, or either of them, had reasonable grounds to believe that they or either of them were in danger of death or great harm at the hands of Combs.

It is true that an acquittal on the ground of self-defense rests on what the defendant believes and has reasonable grounds to believe, and not on what the jury may believe. In other words, this instruction, in place of reading as it does, that: "If the jury shall believe from the evidence that the deceased, Sam Combs, had unlawfully and forcibly assaulted the home of the defendants, and if the jury shall further believe from the evidence that the defendants, or either of them, or any member of the family, were in danger of death or the infliction of some great bodily harm at the hands of the deceased at and before the time of the shooting, then in such event the defendants, or either of them, had the right to use such force  .  .  ." should have read: "If the jury shall further believe from the evidence that the defendants, or either of them, believed or had reasonable grounds to believe that they, or either of them, or any member of the family, were in danger of death or the infliction of some great bodily harm at the hands of the deceased at and before the time of the shooting, then the defendants, or either of them, had the right to use such force at their command as was necessary or believed by them to be necessary in the exercise of reasonable judgment to repel the assault."

This instruction would have been in better form if the words we have indicated had been inserted. But the omission from this instruction at the place mentioned of the words, "they or either of them believed or had reasonable grounds to believe that they, etc.," did not

prejudice the substantial rights of the accused, because in other instructions the jury were distinctly told that they should acquit the Millers, and each of them, if they or either of them believed that they, or either of them, was in danger of death or the infliction of some great bodily harm at the hands of said Combs, and that it was necessary, or was believed by either of them, in the exercise of a reasonable judgment, to be necessary to shoot and kill him.

It is further argued that the court committed error in telling the jury in instruction No. 6, that the defendants "had no right to use more force than was actually necessary or reasonably appeared to be necessary for that purpose, and if the jury shall believe from the evidence that the defendants did not use any more force than was necessary in the exercise of reasonable judgment to repel such assault" they should acquit.

The particular objection to this part of the instruction is the use of the words "more force than was actually necessary," but we do not find any substantial error in the use of the words criticised.

It is further insisted that as Delilah Miller, the only witness who gave direct evidence of the circumstances under which Combs was shot and killed, testified that he violently and forcibly broke into the room in which she was sleeping and that she shot him because she believed she was in danger and to protect her home, the jury should have been told in substance that she had the right to shoot and kill to protect her home from the violent and forcible attack of the intruder.

But we think the court properly instructed the jury on this subject. The law does not authorize a person to take the life of another merely because such other is forcibly trespassing on his premises. To excuse the homicide, under circumstances like this, it is essential that the shooting and killing should be believed by the person accused necessary or reasonably necessary to protect himself or his family from danger.

It appears that after the jury had taken the case, they returned to the courtroom and requested the court to permit them to question Sallie Ann Miller, who had testified as a witness for the accused. In response to this request, the court recalled Mrs. Miller to the witness stand, and Mr. Hayes, one of the jurors, in the presence of the court, the counsel for the defendant and the Commonwealth, and the defendants, asked her the following

questions, to which she made the following answers: "Q. We want to ask you if counsel for the defendant asked you on the trial if App Eversole and Andy Williams threatened to put your son in the penitentiary unless you produced evidence against Allen Miller? A. They was talking to me, said I had better know something against Allen; they said it would be a heap better for me if I knowed something. Q. The point we were after was whether the witness was threatened that unless she produced evidence against Allen Miller, that her son would be sent to the penitentiary? A. They said it would be better. That's the way I stated it at the first start. They said it would be better if I did know something against Allen Miller; it would be better on my boy if I did know something against Allen Miller; I think that's the way I stated it the first time. I don't think I have forgot." The court, to the jury: "Is that all you wanted to ask her?" The jury: "Yes."

Counsel for the defendants objected and excepted to this evidence, and moved the court to have the stenographer's notes of the evidence given by the witness read to the jury upon the point she was inquired about, which motion was overruled.

In order to understand the purpose of the jury in asking these questions, it should be stated that Cager Miller, a son of Sallie Ann, was indicted in connection with Allen and Delilah Miller, but the indictment against him was either dismissed or the case continued as to him; it does not appear which. At any rate, he was not put upon his trial with Allen and Delilah Miller; and counsel for the defendants endeavored to show that the prosecution procured the indictment of Cager Miller in order to force his sister, Nancy Miller, the principal witness for the Commonwealth, to give the evidence that she did by the threat made to her mother, Sallie Ann Miller, as well as herself, that unless she did connect Delilah and Allen Miller with the murder, her brother, Cager, would be prosecuted and sent to the penitentiary; and on the examination of Nancy and her mother, Sallie Ann Miller, counsel for the defendants endeavored to show by them the state of facts stated, but failed to do so, except that Sallie Ann Miller, when first introduced as a witness, testified substantially as she did when recalled by the jury.

We do not find any objection to the course pursued by the trial judge in permitting Sallie Ann Miller to be

recalled and examined by the jury in the presence of the accused and their counsel. Any member of the jury has the right, during the examination of a witness, to ask any competent, pertinent question, and after the jury has retired to consider their verdict, they have the right to return to the courtroom and ask that a witness, who has testified, be recalled if he is present or so convenient as to be quickly secured and in the presence of the court, the parties to the case and their attorneys ask the witness any pertinent, competent questions relating to matter brought out on the examination of the witness.

After a careful consideration of the case, we have reached the conclusion that no error prejudicial to the substantial rights of the defendants was committed during the trial, and the judgment is affirmed.