## Dulaney et al. v. Sebastian's Administrator.

(Decided June 12, 1931.)

O. H. POLLARD and R. L. POLLARD for appellants.

WILLIAMS & ALLEN for appellee.

578

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Paul Dulaney and the H. H. Miller Construction Company have appealed from a $15,000 judgment recovered against them by the administrator of Mendell Howard Sebastian for the death of his intestate.

This litigation is the outgrowth of an automobile collision that occurred about 5:30 p. m. on Monday, September 10, 1928, in which Sebastian was killed. Sebastian was employed by the state highway commission, and at the time of this collsion was driving a model T. Ford truck in a northern direction from Jackson to a place called Frozen. Paul Dulaney was employed by the H. H. Miller Construction Company, and was driving a Chevrolet truck in a southern direction from Frozen to Jackson. The weather was dry, the road had merely the grade and drain work done, and it was very dusty. Sebastian, in the Ford, according to an average estimate made by the various witnesses, was going north at about 13 miles per hour, and the average of the evidence of the witnesses is that Dulaney in the Chevrolet was coming south at about 45 miles per hour, when they collided. The Ford truck driven by Sebastian was struck in the left side near the front. The principal blow fell about where Sebastian was seated. He died in a few minutes.

When sued for these injuries, Dulaney and the construction company filed an answer in three paragraphs. The first was a traverse of the petition; the second a plea of contributory negligence; and in the third they allege most elaborately that Sebastian was employed by the state highway commission, engaged in maintaining the same roads that Dulaney and the Miller Construction Company were engaged in building under a contract with the state highway commission, that Sebastian and the state highway commission were operating under the Kentucky Workmen's Compensation Act and that Dulaney and the Miller Construction Company were also working under that act, and that the defendants and Sebastion were each and all engaged in the furtherance of a common purpose. Therefore, said the defendants, the court was without jurisdiction. The court sustained a demurrer to this paragraph, and the correctness of that order is our first question.

The allegation that Dulaney and the H. H. Miller Construction Company were engaged in building this

road under a contract means they had certain work they had a right to do, that they had a right to complete, and for which they could recover on their contract if not permitted to complete; that makes them independent contractors. See Bowen v. Gradison Const. Co., 263 Ky. 270, 32 S. W. (2d) 1014. The demurrer to this paragraph was properly sustained. To make the provisions of the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.) applicable, the relation of master and servant must appear. Section 4890 of the Ky. Statutes applies here, and not section 4891.

The next ground for a new trial is addressed to the ruling of the court on the evidence. There were thirteen rulings adverse to the defendants, which we have examined and regard as correct, and evidently the defendants reached the same conclusion, for they have not discussed them.

The next ground for a new trial is alleged misconduct of the attorney for Sebastian's administrator in his argument. The bill of exceptions shows this was said and done:

"The Honorable G. C. Allen, Attorney for plaintiff, in closing the argument on behalf of plaintiff stated to the jury: 'That the proof conclusively showed that the defendant, Paul Dulaney, was running his truck at a mad and outrageous rate of speed, in view of his own testimony that the dust was so thick he could not see in front of him,' to which the defendant objected at the time. The trial judge being absent from the room at the time said statement was made, being in an adjoining room, and upon being notified of defendant's objection to said statement by counsel, returned to the court room and stated to the jury that they should consider only the evidence heard on the trial, and gave no further admonishment."

A trial judge should remain in the courtroom, and counsel should be kept within proper bounds, but there is evidence in this record on which this argument was based, and this language was within the range of legitimate argument. No witness had used the words "mad and outrageous" in describing the speed of Dulaney's truck, but from the evidence it legitimately could be argued it was so. This argument was a fair deduction from the evidence.

The next ground on which defendants ask a new trial is that the court erred in not giving the jury a peremptory instruction to find for them as requested by them at the close of the plaintiff's evidence and again at the close of all the evidence.

The basis of this contention is that it was physically impossible for this accident to have happened as the plaintiff contended that it did and to have produced the results that were produced. A disposition of this contention requires some further statement of the facts.

Defendant's Chevrolet truck was going south, and should have been on the west side of the highway. The Ford truck driven by the deceased was going north, and should have been on the east side. Dulaney says he was on the west side of the road and driving the Chevrolet truck about 25 miles per hour, in a cloud of dust, that he did not see the Ford truck at all, and could not see it for the dust. Dulaney does not claim he was keeping a lookout ahead, but that he had his eye on the river bank. On the west side of this road is the Kentucky river; on the east side is a mountain. After the collision, the rear end of the Ford was jammed up against the mountain and that truck was headed northwest, the front end of defendants' Chevrolet was jammed up against the mountain just south of the Ford, and it was headed southeast. Thus they were practically against each other and parallel, one headed one way and one the other. Both were on the east side of the road. Seated beside Dulaney on the Chevrolet before this collision was Charles Wireman, who had in his hand a teacup, a tin cup, and his lunch bucket containing three dozen eggs. After the collision, these eggs were found scattered over the west of the road something like 15 feet from where the collision is supposed to have occurred; the teacup about 20 feet from supposed point of collision and the broken glass from the headlights of the Chevrolet about 14 feet from the supposed point of collision and near the center of the road. These things the defendants argue show conclusively that the Chevrolet was on the west side of the road. These objects were all easily hurled and perhaps were hurled to the points where they were found, but those two trucks were not so easily hurled about, and it is a significant fact that both were found on the east side of the road, a point the deceased had a right to be and where Dulaney should not have been. Wireman, who was riding with Dulaney, says Dulaney was about the center

of the road. A hole or scar in the road which is supposed to have been made by the collision was shown by measurement with a steel tape to have been 10 feet from the east side of the road and 19 feet from the west side. Four men, who were riding on the Ford truck, say it was on the east side of the road. The Ford truck had on its rear wheels new tires of an unusual kind, and the tracks thereof show the Ford was about 18 inches from the east edge of the road. One disinterested eyewitness said he saw the two trucks collide; that Dulaney had just passed him; that he was running so fast he watched him; and that "if anything it was nigher the east side." The peremptory instruction was properly refused.

The next ground for a new trial is that the court erred in giving the six instructions that it did, but we are unable to see in them anything prejudicial to the defendants, and they have pointed out nothing of that kind in their brief.

Their next complaint is of the refusal by the court to give the two instructions offered by them. These instructions are practically the same, so we shall give but one of them: "Although the jury may believe from the evidence that the collision of the truck driven by Mendell Howard Sebastian with the truck driven by the defendant, Paul Dulaney, resulted in the injuries to said Sebastian from which he died, yet if they further believe from the evidence that the highway at the point of collsion and at the time and place of said collision was covered with dust, which obscured the vision of the drivers of said trucks to such an extent that they were unable to see each other or each other's trucks in time to avoid said collision and that said collision was the result thereof and not caused by the negligence of defendant, Paul Dulaney, in driving said truck, they will find for the defendant."

That was properly refused. That is not the law. The dust did not cause this collision, it was caused by the negligent operation in the dust of the automobile driven by Dulaney in the way it was.

About a mile and a half from this collision an automobile passed Dulaney while he was stopped to pick up Charlie Wireman. Dulaney admits having tried to pass this car at one time and that he failed. That car was still in front of him, he perhaps hoped to pass it and get out of the dust. Two witnesses for the plaintiff who were in this Ford truck testify Dulaney pulled to their side

just before the collision. Here is their language: One said: "Appeared like he pulled in toward us." The other said: "He cut his car looked to me like directly into ours."

The way and place where this Ford was struck as disclosed by a photograph of it, corroborates their testimony. Dulaney, when blinded by dust, turned to the left perhaps as a part of his plan to pass the car in front of him. Here is what we have said of such: "A driver of a motor truck on a public highway who voluntarily turns his vehicle from the right-hand side of the road to the left, where vehicles going in the opposite direction are expected to travel, at a time when he cannot see the road for dust, without giving a reasonable warning signal, is grossly negligent." E. P. Barnes & Brother v. Eastin, Adm'r, 190 Ky. 392, 227 S. W. 578, 580. To same effect, see Bong v. Webster, 217 Ky. 781, 290 S. W. 662; Downing v. Baucom's Adm'x, 216 Ky. 108, 287 S. W. 362; Castille v. Richard, 157 La. 274, 102 So. 398, 37 A. L. R. 586, the valuable notes following it; and volume 1, pp. 434-436, Blashfield's Cyclopedia of Automobile Law.

His next ground for a new trial is that the verdict is excessive. The deceased was 20 years of age, was a boy of good habits, and in good health. He had an expectancy of a little over 34 years. He was earning $3.50 per day at the time. The earning power of such a youth can be expected to increase as he becomes more experienced. We do not regard this as excessive.

The final contention is that the verdict is not sustained by sufficient evidence, and is contrary to law. We do not so regard it. Statutes have been enacted in an effort to procure the prudent operation of automobiles. These statutes should be observed. When men are employed to operate automobiles care should be exercised to select prudent and careful men, and, when men are employed who are not such, responsibility must follow.

"It is only by imposing vicarious liability upon employers that such vigilance can be secured in the supervision of the men in their employment as is needed, to protect others. It is only by such a rule that employers can be forced to weed out the reckless and the incompetent." Bowen v. Gradison Const. Co., 236 Ky. 270, 32 S. W. (2d) 1014, 1019.

The judgment is affirmed.