After the trial court denied their motion for new trial, Joyce and Johnny Carter, plaintiffs, appealed, arguing that the amount of the jury verdict was grossly inadequate in light of the evidence presented.
On March 12, 1986, a vehicle driven by Alene Knight Reid, defendant, allegedly ran a red light and collided with an automobile driven by Mrs. Carter. Mrs. Carter was transported to the emergency room at Montgomery's Humana Hospital, complaining of headaches, neck pain, lower back pain, and numbness down the right arm and leg. She was examined by Dr. Joseph Keith, a neurosurgeon on call that day. Mrs. Carter was released from the emergency room the same day and was told to take it easy for a couple of days.
According to her, the pain persisted, and over a two-year period Mrs. Carter was examined or treated by several medical doctors, two dentists, a chiropractor, a psychologist, and a physical therapist. Evidence of medical bills totaling over $47,000, and estimates of future medical expenses of approximately $5,000, were presented at trial. The jury returned a verdict in the amount of $22,500 in favor of Mrs. Carter, and $1,500 in favor of Mr. Carter on his loss of consortium claim. The trial court entered judgment in accordance with the verdict and subsequently denied plaintiffs' motion for a new trial.
The issue presented is whether the trial court erred to reversal in denying a motion for a new trial where the jury returned a verdict in an amount less than the amount of special damages Mrs. Carter's evidence tended to prove.
In reviewing the trial court record and the depositions admitted into evidence, we find that the evidence justified the verdict, and we affirm the trial court's denial of the motion for new trial.
The following medical testimony was presented to the jury:
Dr. Joseph Keith testified by deposition that Mrs. Carter returned to his office on three occasions with continued complaints of headaches, neck pain, back pain, and numbness down her right arm and leg. He performed various tests and X-rays, which indicated no gross abnormalities, but he did detect a slightly slipped disk that could have impinged on the spinal cord or on a nerve. Dr. Keith performed a discectomy at the C-5 and C-6 level of the neck in an attempt to give Mrs. Carter some relief. Dr. Keith believed that it was reasonable to assume that the slipped disk was caused by the accident, but he was unable to state this with certainty. Dr. Keith further testified that, according to the A.M.A. impairment rating book, Mrs. Carter would have a 10 to 15 per cent disability as a result of the slipped disk.
Mrs. Carter continued to complain of pain. Unable to find the cause of her complaints, Dr. Keith referred Mrs. Carter to Dr. Suzie Tindall, a double board-certified neurosurgeon-neurologist at Emory University in Atlanta.
Dr. Tindall testified by deposition that Mrs. Carter's slipped disk did not seem to have been compressing on any nerve to her arm. She stated that if something is wrong with the brain, spinal cord, or nerves, the tendon reflexes would be abnormal. However, she found no abnormalities in Mrs. Carter's reflexes. Dr. Tindall recommended continued conservative care and no further surgery. Dr. Tindall saw Mrs. Carter again seven months later; she believed that the decreased range of motion in Mrs. Carter's neck was voluntary. Further, Dr. Tindall testified that, when Mrs. Carter was distracted, she could raise Mrs. Carter's legs and that she did not complain of any pain, as she did when paying attention. Dr. Tindall believes that Mrs. Carter had a great deal of hysterical overlay *Page 59 
present, and that a complete resolution of her disabilities was dependent on settling any claims involving her accident. Dr. Tindall further testified that Mrs. Carter exhibited signs of secondary gain, a condition in which a person develops complaints or symptoms that benefit him or her in some way.
Mrs. Carter's chiropractor, Jerry Kirby, D.C., testified that he found Mrs. Carter's neck area to be extremely inflamed. This was determined by feeling the tense muscles and interpreting X-rays taken in his office. Mr. Kirby was unable to provide any long-term relief to Mrs. Carter, but, after seeing her in his office on 50 or 60 occasions, it was his opinion that her injuries were permanent, because he believed that Mrs. Carter had suffered from torn muscle tissue. Mr. Kirby testified that the scar tissue that replaces the torn muscle is not as strong or as flexible as the muscle tissue and therefore causes pain when the muscle is stretched. Mr. Kirby referred Mrs. Carter to Dr. John E. Hackman, a board-certified neurosurgeon, in an attempt to remedy the cause of her pain.
Dr. Hackman testified basically to the same findings as the previous medical doctors; i.e., no nerve root compression, normal reflexes, and normal bone scan. Dr. Hackman did find a disk protrusion at the L-4 and L-5 level of the spine that was not pinching a nerve. However, he further testified that this condition exists in many people without bothering them. Dr. Hackman stated that Mrs. Carter complained of considerable pain and that that is why he performed surgery to remove the disk in that area, but that Mrs. Carter continued to complain of pain.
Dr. Hackman referred Mrs. Carter to Dr. Howard Snider, who testified that he diagnosed her as having a right thoracic outlet syndrome, which is a condition where there is not enough space between the collarbone and the first rib, so that the nerves and blood vessels are pinched. Dr. Snider testified that most people having this syndrome have some psychological overlay, that the syndrome occurs mostly in women, and that it can be congenital and can occur without trauma. Dr. Snider acknowledged that the diagnosis of the syndrome is based solely on what the patient tells the doctor. He further acknowledged that the diagnosis is controversial in the medical community. Mrs. Carter refused to undergo an operation to correct this condition.
Counsel for Mrs. Carter referred her to Dr. Karl Kirkland, a psychologist, for an evaluation. Dr. Kirkland testified that he conducted the Minnesota Multiphasic Personality Inventory Test (MMPI), a standard objective questionnaire used to assess personalities, and determined that Mrs. Carter was experiencing a conversion reaction disorder that worsens physical symptoms. He defined a conversion reaction as psychological overlay in which a person has some unresolved emotional conflict that exceeds his or her ability to cope with it, and which may become manifested physically. Dr. Kirkland testified that he believed that Mrs. Carter had been experiencing a conversion reaction since shortly after the accident, and that she was experiencing one at the time Drs. Keith and Hackman performed surgery on her. Dr. Kirkland recommended psychotherapy and stress management as treatment, rather than surgery.
Within a five-month period, abscesses developed on the roots of three adjacent teeth, requiring a root canal to be performed on each of these teeth. Dr. John Lightfoot, an endodontist who performed the root canals, testified that it was very unusual for three teeth in a row to abscess within so short a period. He stated that it was probably caused by the trauma from the accident. However, Dr. Lightfoot also stated that one of the teeth had a large filling that could have caused that tooth to abscess. In regard to one of the other abscessed teeth, Dr. Lightfoot stated that the X-ray did not reveal the abscess, but that he had relied on what Mrs. Carter told him.
All the doctors and other attending medical personnel testified that the treatment they rendered was necessary and that their charges were reasonable. *Page 60 
Mr. and Mrs. Carter argue that, given the evidence of her medical expenses, pain, and suffering, the jury's verdict awarding them a total of $24,000 in damages is inadequate. We disagree.
We find no evidence that the jury's verdict was a result of passion, prejudice, or other improper motive, nor do we find that the verdict was so opposed to a preponderance of the evidence as to be unjust. The expert testimony was contradicting, and the jury, in exercising its function as the trier of fact, was free to weigh the evidence presented and reach a determination as to Mr. and Mrs. Carter's damages.
 "A jury verdict is presumed to be correct and should not be set aside on the ground of inadequacy of damages unless the amount is so inadequate as to plainly indicate that the verdict was the result of passion, prejudice, or improper motive. A strong presumption of correctness applies to a trial court's refusal to grant a motion for new trial. In reviewing a trial court's decision on whether to grant a motion for new trial on the ground of inadequacy of damages, we look to see whether the verdict is so opposed to the preponderance of the evidence as to be clearly wrong and unjust." (Citations omitted.)
Lartigue v. Fleming, 489 So.2d 583 (Ala.Civ.App. 1986).
The assessment of damages is a matter within the discretion of the jury in the first instance, and in the discretion of the trial court on a motion for a new trial. Hickox v. VesterMorgan, Inc., 439 So.2d 95 (Ala. 1983).
The Carters contend that a verdict for damages must be proportionate to the damages proved, and that a jury is not at liberty to wholly ignore undisputed testimony of competent witnesses and substitute its own conclusion, citing Deal v.Johnson, 362 So.2d 214 (Ala. 1978). This is a correct statement of law, but it is inapplicable to this case. There was evidence from which the jury could award an amount less than the special damages Mrs. Carter's evidence tended to show. The medical testimony presented was contradictory. No two doctors could agree as to what was causing Mrs. Carter's continued pain. The only witness who would state with certainty the cause of her pain was the chiropractor, Mr. Kirby. His findings were based on feeling the muscles and on his interpretation of X-rays taken in his office. To support the jury verdict, there was ample testimony that the pain may have resulted from psychological problems rather than physical injuries received in the accident.
Based upon the evidence before it, the jury could have concluded that Mrs. Carter did not experience the pain that she claimed to have incurred and that she claimed resulted in all of the various treatments she received. It likewise could have believed that she did experience the pain, but that it was caused by some emotional or psychological disorder unassociated with the automobile accident.
It is the jury's function to resolve conflicting inferences such as those presented by the evidence in this case.
The trial court instructed the jury as follows:
 "I charge you that the measure of damages for medical expenses is all reasonable expenses necessarily incurred for doctors and medical bills which the plaintiff has paid or becomes obligated to pay, and the amount of reasonable expenses of medical care, treatment and services reasonably certain to be required in the future. The reasonableness of, and the necessity for, such expenses are matters for your determination from the evidence."
It is the function of the jury to sift through and weigh contradicting testimony and to make a determination as to the reasonableness and necessity of medical treatment and its cost, and then to allow damages in accordance with its findings. Here, the jury could have believed that Mrs. Carter received all of the medical services and that they were necessary and that the charges for them were reasonable, but that they were not proximately caused by the automobile accident.
The denial of the Carters' motion for a new trial was not error. The grant or *Page 61 
denial of a motion for a new trial is within the sound discretion of the trial court, whose exercise of that discretion carries with it a presumption of correctness, which will not be disturbed on appeal absent an abuse of some legal right disclosing plain and palpable error. Stauffer ChemicalCo. v. Buckalew, 456 So.2d 778 (Ala. 1984). A review of the record discloses no abuse of discretion or plain and palpable error.
The Carters next contend that the trial judge committed reversible error by leaving the courtroom while depositions of various medical witnesses were being read to the jury.
The Carters offered no objection to the trial judge's absence during the reading of the depositions, and, in fact, acquiesced to his absence. The depositions that were read to the jury were admitted into evidence and were before the trial judge when he ruled on the motion for a new trial. Assuming, without deciding, that it is error for the judge to leave the courtroom while depositions are being read, unless an objection is made the issue is waived and there is nothing for an appellate court to review. Dendy v. Eagle Motor Lines, Inc., 292 Ala. 99,289 So.2d 603 (1974).
AFFIRMED.
JONES, ADAMS, STEAGALL and KENNEDY, JJ., concur.