**TRANSIT AUTHORITY OF RIVER CITY (TARC) and Lester E. Midkiff, Appellants,**

v.

**Ruth E. MONTGOMERY, Appellee.**

**91–SC–547–DG.**

Supreme Court of Kentucky.

Sept. 3, 1992.

See also 770 S.W.2d 689.

Allen Button, Gittleman & Barber, Louisville, for appellants.

Donald H. Smith, Louisville, for appellee.

REYNOLDS, Justice.

This appeal involves charges that the trial judge denied Ruth Montgomery a fair trial by reason of prejudicial remarks and conduct which allegedly resulted in a denial of her claims against Transit Authority of River City (TARC) and its driver, Lester E. Midkiff.

Appellee, Montgomery, was a passenger on a TARC bus driven by Lester E. Midkiff. This bus was specially equipped to handle three wheelchair passengers, wherein designated seats would "flip up" and allow a wheelchair to be locked in place. Appellee, who was not unduly handicapped, was sitting in one of the special seats when an automobile driven by Ernest Jarboe ran an intersectional red light and collided with the bus. Seat belts were not available to the appellee in the seat in which she was seated. Upon application of the bus brakes, appellee was thrown from the seat and sustained a fractured hip and pelvis.

The automobile driver, Jarboe, had been named as an original defendant, but settled with Montgomery and died prior to trial. The trial court judgment recited:

The fault of the intersection collision was determined to be the entire responsibility of the settling tortfeasor Ernest Jarboe.

.    .    .    .    .

The damages awarded the Plaintiff and due to the negligence of the settling tortfeasor Jarboe were as follows: $10,895.43 in medical expenses and $50,000.00 for pain and suffering.

Montgomery appealed and the Court of Appeals reversed the judgment of the trial court upon the belief that the misconduct of the trial court was palpable error requiring reversal and remand for a new trial. This Court granted discretionary review to Transit Authority of River City (TARC) and Lester E. Midkiff. The appellants (TARC and Midkiff) state that the issue of judicial misconduct has not been preserved as no contemporaneous objections were offered by Montgomery and by reason of the failure to move for a new trial. It is further asserted that neither any act or remark of the trial judge was so prejudicial as to constitute palpable error subject to review pursuant to CR 61.02.

The appellee alleges 31 instances of error that had the cumulative effect of prejudicing her case to such an extent that she was denied a fair trial. The instances of alleged error include sarcastic remarks by the trial judge, occasions when the judge inquired of jurors if they had questions for the witnesses, interruptions by the trial judge of witnesses and counsel, and alleged absences of the judge from the courtroom.

The claims of prejudicial error, raised for the first time on appeal, clearly mandated a complete review of the video proceedings of the three-day trial under the provisions of CR 61.02. The rule provides that "even though insufficiently raised or preserved for review, ... appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

Appellee relies primarily upon *Collins v. Sparks*, Ky., 310 S.W.2d 45 (1958), as the basis for affirming the Court of Appeals. *Collins, supra*, portrays a trend to relax the rule denying review except upon seasonable objection. While omitting contemporaneous objection, the *Collins* error was preserved in a motion for a new trial and, more notably, the "objectionable remarks" questioning the veracity of appellant's testimony as committed by the trial judge was

conduct occurring during trial and before (in the hearing of) the jury.

The two basic circumstances in the *Collins* case which overlay its rationale and principle do not fit this case.

## REMARKS BY TRIAL JUDGE

Some errors alleged by counsel involve sarcastic or disparaging remarks by the trial judge. The Court of Appeals noted that many of the instances of misconduct were meritless, while others were noted to be sarcastic remarks including the use of a blackboard and the reading of depositions.

It is axiomatic that the judge should refrain from making comments that tend to create prejudice to the litigants, the witnesses or the subject matter of the litigation. *Commonwealth v. Eubank*, Ky., 369 S.W.2d 15 (1963). A trial judge should remember that undue importance and great weight may be attached by the members of the jury to any remark made by him in their presence. *Rose v. Vasseur*, Ky., 358 S.W.2d 540 (1962). A remark, if improper, is not grounds for reversal if it does not reach the ears of the jurors. *Eubank, supra*. Mere casual remarks which do not tend to excite prejudice more to one party or the other in the presence of the jury may not be held improper. *Eubank, supra*. Thus, the propriety of these remarks must be judged and evaluated on the basis of the particular circumstances of each case.

Of the allegation of sarcastic or disparaging remarks, we do not note or view such statements to be either disparaging or sarcastic and prejudicing the parties involved. This Court finds that sarcasm is generally exhibited by contempt or disgust or remarks spoken bitterly or tauntingly or in a manner of rebuke delivered in a tone of contempt. This was not the portrayal so argued by appellee and, again, the majority of these discussions, other than the humorous comments about the blackboard, were outside the hearing of the jury. Such comments simply do not constitute reversible error.

## JURORS' QUESTIONS AND TRIAL COURT INTERRUPTIONS

Some errors alleged by appellee pertain to situations where the judge asked jurors if they had any questions for the witnesses who were testifying and situations where the judge allegedly "interrupted" the appellee's witnesses and counsel. Appellee has mistakenly argued that the trial court's conduct was limited solely to the presentation of the appellee's case. Fair review of the video discloses that inquiry was made of the jurors for questions to be directed to appellants' witnesses as well.

### (A) JUROR QUESTIONS

■ It was not improper, in this case, for a juror to ask any competent and pertinent questions of a witness, if permitted to do so by the court. *Miller v. Commonwealth,* Ky., 188 Ky. 435, 222 S.W. 96 (1920). In fact, the practice is encouraged with strict supervision by the trial judge, if it is likely to aid the jury in understanding a material issue involved. *Louisville Bridge and Terminal Co. v. Brown,* 211 Ky. 176, 277 S.W. 320 (1925); *Stamp v. Commonwealth,* 200 Ky. 133, 253 S.W. 242 (1923). Of course, if a juror should ask an incompetent or irrelevant question, counsel should object and the court should sustain such an objection. *Brown, supra.* Herein, each juror who proposed a question was called to the bench, with all counsel, and a preliminary review or comment as to any proposed question was discussed out of the hearing of the remaining jurors.

### (B) TRIAL COURT INTERRUPTIONS

■ As a principle, it is fundamental that a judge may not act in the dual capacity of judge and advocate. *Rankin v. Blue Grass Boys Ranch, Inc.,* Ky., 469 S.W.2d 767 (1971); *Chism v. Lampach,* Ky., 352 S.W.2d 191 (1961); *Evans v. Humphrey,* 281 Ky. 254, 135 S.W.2d 915 (1940). It is emphasized that a judge need not be a automaton or robot or mere umpire. *Chism, Evans, supra.*

■ Judges are sworn to administer justice and to that end should see that their decrees are carried out. *Evans, supra,* 281 Ky. p. 260, 135 S.W.2d 915. A judge should and does have the right and duty, within reasonable limits, to bring out the facts in the case before him clearly, so that important functions of his office may be fairly and justly performed. *Evans, supra.* While the judge should leave to the lawyers the development of the case and be cautious and circumspect in his participation and conduct, controlling the proceeding in a manner that will give it the atmosphere of impartiality, *Chism, supra,* p. 194, we hold that the trial judge, exercising considered restraint, is not required to remain in a sterile vacuum. He simply does not sit upon a bench as a silent and passive spectator of what is going on, but sits to administer the law and guide the proceedings before him. He is vested with a large discretion in the conduct of the trial of causes and an appellate court will not interpose to control the exercise of such discretion by a court of original jurisdiction, unless there has been an abuse or a most unwise exercise thereof.

■ The "body language" displayed by the trial court, the demeanor, plain physical attitude and tone of voice do not approach or support the vituperative character which appellee attributes to the 31 incidents which occurred over a three day period. The appellee observed that the "acts" did not become apparent or belatedly manifest themselves until after trial and upon video review. These assertions, when viewed in context of the entire three day trial, are not sufficient to warrant a finding that the trial judge was guilty of prejudicial misconduct.

### ABSENCES OF THE JUDGE FROM THE COURTROOM

Of concern are the appellee's charges that the trial judge absented himself from the courtroom on two occasions. The first is stated to be for a fifteen second period which occurred during appellee's examination of a witness. The second time is stated to be for a 30 minute period which occurred during appellee's closing argument.

The Court of Appeals noted that appellee's counsel states in his brief "that he did not realize that the trial judge left the courtroom during closing argument until the video tape of the trial was reviewed in preparation for briefing."

The videotape, upon our replays, discloses that the judge was not in his customary seat upon the bench during the time frames cited by appellee. From all forms of argument of both counsel, we discern that neither party can state with absolute certainty that the trial judge was outside the confines of the courtroom. There is no disputing that the trial judge was not in his customary seat on the bench, but no opinion or rule exists which requires a judge to remain anchored on the bench during the entire trial. It is not oxymoronic to state that the mind will absorb only what the end will endure. Judges, for various legitimate reasons, sometimes absent themselves from the bench, i.e., to obtain a better view of exhibits, diagrams, witnesses or even enhance their alertness.

■ Not all courtrooms are laid out in such a manner as to afford a perfect view to all the participants of a trial and the limited video scope in this Jefferson Circuit courtroom discloses disadvantages, including the lack of anything approaching full video scope of the facility. From the video viewing scope, the trial judge was noted, while off the bench on one occasion, to be seated behind counsel table, and then near counsel table, and on still another occasion, while not within view, his voice could be clearly discerned.

Judicial absences during the taking of evidence have been held to involve either harmless error or a waiver by failing to make a timely objection. *See Zinnamon Assoc. v. Swafford,* 488 F.2d 863, cert. denied 417 U.S. 968, 94 S.Ct. 3172, 41 L.Ed.2d 1139, (1974); *Carter v. Reid,* 540 So.2d 57 (1989). Similarly, absences during the argument of counsel to the jury have been held not to require reversal or merely harmless where the complaining party was not in any way prejudiced by what occurred during the judge's absence or because it was regarded as having been waived by counsel. *See Ideal Pool Corporation v. Champion,* 157 Ga.App. 380, 277 S.E.2d 753 (1981); *Dulaney v. Sebastian's Adm'r,* 239 Ky. 577, 39 S.W.2d 1000 (1931); *Wells v. O'Hare,* 209 Ill. 627, 70 N.E. 1056 (1904); *Baxter v. Ray,* 62 Iowa 336, 17 N.W. 576 (1883).

The absence of the trial judge during the course of trial is subject to question and the propriety of such a course is not to be commended. The absence of a trial judge during arguments of counsel to the jury has been held in most cases not to require reversal. 25 ALR3d 637, p. 659. Neither counsel objected to the trial judge's absence, if indeed he was absent, but both advised they were unaware of any absence until a review of the video failed to disclose him on the bench.

Without a definitive showing that the trial judge was, in fact, absent from the courtroom, coupled with a showing of prejudice occurring during the claimed absence, there is no palpable error. All counsel were simply oblivious to the trial judge's position or presence.

The opinion of the Court of Appeals is reversed and the judgment of the Jefferson Circuit Court is reinstated.

All concur.