RENDERED:  JUNE 23, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1300-ME

BRENDAN RICHARD MCCLUSKY                                        APPELLANT


v.
APPEAL FROM SHELBY CIRCUIT COURT
HONORABLE S. MARIE HELLARD, JUDGE
ACTION NO. 22-D-00113-001


JANET LEE YOUNT                                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE:  The Appellant, Brendan McClusky ("McClusky"), appeals from

a Domestic Violence Order ("DVO") entered against him by the Shelby Circuit

Court.  After careful review of the briefs and the law, we affirm.

## I. BACKGROUND

The Appellee, Janet Yount ("Yount"), filed a domestic violence petition on September 20, 2022, against McClusky, who is her grandson. Therein, Yount recounted an incident on September 14, 2022, which happened at her home in Shelby County as well as a history of verbal abuse. She alleged as follows:

> I have had custody of [McClusky] since he was 5 [years] old. He has been verbaling [sic] abusive to only me in teenage [years]. I have over and over told him that the language he uses in my house is not [ac]ceptable but it never stops. I had told him about a month ago [he] and his roommate were not moving in my house to save money and [he] jumps up and called me a fuc***g bitch. I was boiling mad. [T]his is just a [sic] for instance of the ep[i]sodes going on in my house. On the 14th of Sept 2022 I had had enough of it. I did tell him to leave but he let me know – [no] f*****g way. I did push him then he hit me on my arm. I feel its best to take these steps because its going to get worse. I was called fuc***g c[***], fuc***g bitch, etc. He will not leave my home when told too [sic].

(Record ("R.") at 7-8.) Yount requested that McClusky remain away from her residence in Shelbyville; the only contact she wanted to remain in place was "if need medical treatment." (R. at 10.) Later, on September 20, 2022, the on-call judge entered an emergency protective order ("EPO") and issued a summons. (R. at 4.) The Shelby County Sheriff's department served McClusky later that day with notice that a hearing was set for September 28, 2022. (R. at 1.)

-2-

Both parties appeared at the September 28, 2022, hearing without legal representation. The circuit court placed each party under oath and reviewed the petition while Yount briefly recounted the incident that occurred on September 14, 2022. (Video Record ("V.R.") Sep. 28, 2022, Hearing – 11:14:30.) Afterward, the circuit court asked Yount if she felt threatened by McClusky and she responded, "uh yeah, he gets pretty hot, you know, and I do too, but I think it's just best that we keep our distance for a while." (V.R. Sep. 28, 2022, Hearing – 11:16:30.) The circuit court then asked Yount if there was anything else she wanted to add to the petition, to which she responded negatively, and then it asked McClusky how he wished to respond. (V.R. Sep. 28, 2022, Hearing – 11:16:45.)

McClusky briefly replied and admitted that he did not leave immediately when asked to because he was wanting to leave with his sister and that he did "swat" at Yount when she pushed him because he did not want to fall off her porch. (V.R. Sep. 28, 2022, Hearing – 11:17:00.) Additionally, he testified that he believed Yount was only making a scene because police were present down the road for an unrelated incident; that he believed a DVO would be unnecessary; and that he would still like to visit Yount's residence to see his mother and sister who still lived there as well as some dogs. *Id*. The circuit court then stated that based on the testimony, it would be entering a DVO for a three-year period prohibiting all contact between Yount and McClusky; prohibiting McClusky from

-3-

being within 500 feet of Yount's residence; requiring McClusky to attend a 28-week domestic violence program with Anderson County Recovery; and setting the case for a compliance review in November of 2022. (V.R. Sep. 28, 2022, Hearing – 11:18:00.) The entirety of the hearing lasted for around six (6) minutes.

Afterward, the circuit court entered a standard Administrative Office of the Courts ("AOC") Form 275.3 order of protection for entry of a DVO. The "Additional Findings" section read as follows:

> For Petitioner against Respondent in that it was established, by a preponderance of the evidence, that an act(s) of ☒ domestic violence and abuse, ☐ dating violence and abuse, ☐ stalking, ☐ sexual assault has occurred and may again occur; or **Facts set forth in Petition are hereby adopted as findings of court**.

(R. at 23) (emphasis added for portions written in by the circuit court). Nothing was written in the portion concerning supplemental findings. The docket sheet from the hearing states "DVO /s/" and nothing more. (R. at 21.)

This appeal followed. On appeal, McClusky brings a number of contentions, arguing that the circuit court erred by: (1) failing to read the DVO petition into the record; (2) failing to explain to McClusky his rights concerning representation of counsel prior to the hearing; (3) finding that an act of domestic violence or abuse had occurred and may occur again under a preponderance of the evidence presented; (4) restricting him from being within 500 feet from Yount's

residence; and (5) ordering McClusky to attend a set number of domestic violence classes with a particular provider. Yount did not file a responsive brief.

## II. STANDARD OF REVIEW

This Court reviews the factual findings and entry of a DVO for clear error. *See* CR[1] 52.01; *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010). A judgment is not clearly erroneous if it is supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). To the extent the circuit court was required to interpret the statutes relevant to domestic violence under KRS[2] Chapter 403, its decisions constitute matters of law, and we review those decisions *de novo*. *Commonwealth v. Montague*, 23 S.W.3d 629, 631 (Ky. 2000) (citations omitted).

## III. ANALYSIS

To begin, we observe that Yount failed to file an Appellee's brief herein. This Court may impose penalties under Kentucky Rule of Appellate Procedure ("RAP") 31(H); however, the decision whether to impose any penalties is within our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).

---

[1] Kentucky Civil Rule of Procedure.

[2] Kentucky Revised Statutes.

Considering the serious nature of domestic violence actions, we decline to exercise any penalties. *See Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005).

## A. Recitation of the DVO Petition into the Record

The first matter with which McClusky takes issue is that the DVO petition was not read into the record by the circuit court. We recognize that circuit courts often do read DVO petitions into the record. *See, e.g.*, *Hohman v. Dery*, 371 S.W.3d 780, 781 (Ky. App. 2012). Best practice may warrant that procedure, as the circuit court must question the petitioner to the truth and veracity of the contents of a petition and can efficiently do so after reading the entirety of the petition aloud. *See Rankin v. Criswell*, 277 S.W.3d 621, 626 (Ky. App. 2008). However, there is no requirement under our statutes or court rules stating that a circuit court must read the entirety of the petition into the record in a domestic violence proceeding. The trial court "is vested with a large discretion in the conduct of the trial of causes and an appellate court will not interpose to control the exercise of such discretion by a court of original jurisdiction, unless there has been an abuse or a most unwise exercise thereof." *Transit Auth. of River City (TARC) v. Montgomery*, 836 S.W.2d 413, 416 (Ky.1992).

We also are not convinced by McClusky's argument that he was unaware of the specific allegations of the petition. Firstly, he would have received a copy of the petition along with the summons when he was served; he does not

deny that he ever received a copy. Additionally, the circuit court did state aloud the date of the alleged act of domestic violence and allowed a brief recitation of the petition allegations from Yount while the circuit court was silently reading the petition. The circuit court also asked Yount if there was anything she wanted to add to the petition and allowed McClusky to respond without interruption. Finally, the circuit court did admit the petition into the record, noting on the AOC Form 275.3 order that the "[f]acts set forth in [p]etition are hereby adopted as findings of court." (R. at 23.) For these reasons we believe that the circuit court did not abuse its discretion in not reading the petition *verbatim* into the record.

## B. Right to Representation

McClusky next argues that while he understands he did not have a right to appointed counsel, he nonetheless should have been informed of his ability to retain an attorney, and that this affected the outcome of the hearing. We are unpersuaded by this argument. A DVO proceeding is a civil matter. *Rankin*, 277 S.W.3d at 624. Parties do not have a right to appointed counsel in a civil matter except under narrow circumstances not applicable here. *May v. Coleman*, 945 S.W.2d 426, 427 (Ky. 1997). Having legal representation in a civil matter is an option afforded to a party, and there is no requirement of any court to inform a party of their personal options – that would be tantamount to offering legal advice. When McClusky was served with the summons, he was informed that a legal

action was being brought against him. He then had eight (8) days to seek advice of counsel and retain such if he chose to do so. In this instance, McClusky was given a reasonable opportunity to retain counsel, chose to appear without counsel, and by doing so chose to represent himself.

### C. Entry of the DVO

Next, we address McClusky's concern that the circuit court failed to conduct a proper hearing on the matter. DVO proceedings have enormous significance to both parties involved, and it is a disservice to the law if the parties are not afforded a "full hearing." *Wright*, 181 S.W.3d at 52-53. In *Wright*, this Court held that both circuit courts involved did not conduct a proper hearing; in one hearing the circuit court asked no questions of either party and impermissibly relied upon extrajudicial evidence, while in the other hearing the circuit court only asked two questions of one party and did not allow counsel to complete direct examination. *Id.* at 53. Length does not necessarily equate to having a "full hearing" though; rather, the sufficiency of process is what matters. *See Rankin*, 277 S.W.3d at 623-25 (holding that the DVO hearing in question was inadequate because no testimony was offered in support of the petition, the circuit court did not solicit any, and it only relied on the contents of the petition and extrajudicial review of dependency cases, not because the DVO hearing was only seven (7) minutes long and the record on appeal was only 30 pages). We observe that the

-8-

length of the hearing and record on appeal in this case are rather short; the DVO hearing only lasted around six (6) minutes and the record on appeal was only 27 pages. However, the circuit court properly swore in both parties; asked Yount a question which solicited testimony; asked if Yount had anything to add to the petition allegations; gave McClusky a chance to respond; and did not cut short the testimony of either party. Therefore, we determine that a proper hearing as commended by *Wright* took place.

Before delving into the sufficiency of the evidence, we will briefly address the sufficiency of written factual findings, as analysis of the two go somewhat hand-in-hand.[3] A circuit court's duty to make findings of fact is not satisfied until its findings are reduced to writing. *Keifer v. Keifer*, 354 S.W.3d 123, 126 (Ky. 2011). For cases involving a DVO, notations on a docket sheet referring to oral findings alone are not sufficient. *Boone v. Boone*, 463 S.W.3d 767, 769 (Ky. App. 2015). In contrast, under our current precedent, an AOC Form 275.3 completely and accurately completed is sufficient. *Williford v. Williford*, 583 S.W.3d 424, 430 (Ky. App. 2019). And certainly, a completely and accurately completed AOC Form 275.3, along with some kind of additional findings, is

---

[3] It is important to note that McClusky did not preserve the argument challenging the sufficiency of written findings because he did not file an appropriate motion pursuant to CR 52.02. Instead, his objection relates to the substance and sufficiency of the evidence itself and whether the circuit court appropriately found that entry of a DVO was warranted under the preponderance of the evidence standard.

sufficient to satisfy the circuit court's good faith duty to record its findings. *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015) (holding that a complete and accurate AOC Form 275.3 with a box checked under the "Additional Findings" section along with factual findings made on a docket sheet is sufficient); *Smith v. McCoy*, 635 S.W.3d 811, 813-17 (Ky. 2021) (stating that a complete and accurate AOC Form 275.3 with a box checked under the "Additional Findings" section along with a pre-typed regularly used Findings of Fact and Conclusions of Law form incorporating oral findings made on the record was sufficient); *cf. Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App. 2018) (holding that a mere filling out of an AOC Form 275.3 indicating that domestic violence existed but not making any additional findings on the form or otherwise was not sufficient).

In this case, the circuit court filled out an AOC Form 275.3, marked a box under the "Additional Findings" section stating that an act of domestic violence or abuse occurred and may occur again, and incorporated the petition allegations as findings by reference in that order. (R. at 22-24.) We conclude this was sufficient and permits this Court to engage in a meaningful appellate review of the sufficiency of the evidence itself.

Pursuant to KRS 403.740, following a hearing conducted under KRS 403.730, if a circuit court finds by "a preponderance of the evidence that domestic violence has occurred and may again occur," it may issue a DVO. The

-10-

preponderance of the evidence in a DVO proceeding occurs when the alleged victim was more likely than not to have been a victim. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted).

The phrase "domestic violence and abuse" is defined as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple." KRS 403.720(1). "Physical injury" can mean any "substantial physical pain or any impairment of physical condition" or "[p]hysical damage to a person's body." *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019) (citing KRS 500.080(13) and BLACK'S LAW DICTIONARY (11th ed. 2019)). The definition of "imminent" is "impending danger, and, in the context of domestic violence and abuse as defined by KRS 403.720, belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3); *Collett v. Dailey*, 371 S.W.3d 777, 779 (Ky. App. 2011).

Yount describes the contact between herself and McClusky during the September 14, 2022, incident as a "hit" or a "smack" to her arm. (R. at 7); (V.R.

Sep. 28, 2022, Hearing at 11:15:30.) From the record, it is difficult to determine if this rose to the level of a "physical injury," as Yount did not testify – nor did the circuit court ask – if the hit left any marks or even caused any pain. Regardless, there exists substantial evidence that an infliction of fear of imminent physical injury occurred.

In *Hohman*, we held that the circuit court did not abuse its discretion when finding that an infliction of fear of imminent physical injury existed, though no physical injury occurred, based on the petitioner's testimony that she felt threatened by the respondent's actions which included clenching his fists, yelling, and gritting his teeth, that the respondent lacked self-control and the ability to control his emotions, and that she feared his behavior was going to escalate "to the next level." 371 S.W.3d at 782-83. McClusky's hitting of Yount's arm is like the aggressive body language of *Hohman*. We recognize that this may have been in response to Yount's pushing him, but McClusky did not dispute that he hit her or provide any testimony to refute it other than that he "swatted" at her to avoid falling off the porch. It was the circuit court's prerogative to determine based on the testimony and evidence whether McClusky struck Yount out of anger with a desire to harm or frighten her or simply to prevent himself from falling off the porch without a desire to harm or frighten Yount. The circuit court believed Yount. This was its prerogative.

-12-

Also, Yount's testimony that things will only get worse or could possibly lead to "really physical altercations" is like the petitioner's belief in *Hohman* that the respondent's behavior was going to escalate to the next level. (V.R. Sep. 28, 2022 Hearing – 11:15:30.) Considering the circumstances, we believe McClusky's actions rise to the level of infliction of fear of imminent physical injury, and so the circuit court did not err when it found that an act of domestic violence occurred.

In determining whether domestic violence may again occur, the circuit court must consider the "totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill*, 480 S.W.3d at 925. In the petition, Yount stated that McClusky had engaged in verbal abuse and foul language several times and that he would not leave her residence when asked to do so, which she reiterated during the hearing. McClusky did not challenge or dispute this by his testimony. Considering Yount's statement about feeling threatened, the history of verbal abuse, and the rest of the circumstances, we do not believe the circuit court erred in finding that an act of domestic violence may again occur.

### D. 500 Feet Restriction

KRS 403.740(1)(a)(4) grants the circuit court the authority to restrain the adverse party from "[g]oing to or within a specified distance of a specifically

described residence." Additionally, KRS 403.740(2) provides that when imposing a restriction, the circuit court shall do the following:

> (a) Afford the petitioner and respondent, if present, an opportunity to testify on the issue of the locations and areas from which the respondent should or should not be excluded; (b) Only impose a location restriction where there is a specific, demonstrable danger to the petitioner or other person protected by the order; (c) Specifically describe in the order the locations or areas prohibited to the respondent; and (d) Consider structuring a restriction so as to allow the respondent transit through an area if the respondent does not interrupt his or her travel to harass, harm, or attempt to harass or harm the petitioner.

McClusky takes issue that the circuit court failed to ascertain whether Yount lived at the address listed on the DVO, and that there was no "specific demonstrable danger" concerning that location. When she filed the petition, Yount included the address and asked for McClusky to be restrained from going there. (R. at 10 and 20.) McClusky did not contest that the address is Yount's residence during the hearing; based on the statements of both parties during the hearing there was no question that the residence in question was Yount's even though the exact address was not stated on the record. Both parties also testified that McClusky had his own residence and no longer lived with Yount. We are unaware of any requirement that the circuit court must find a more specific demonstrable danger to restrict an adverse party from the residence of a victim other than domestic violence or abuse occurred and may again occur. A residence is where someone

-14-

lives and sleeps, so it necessarily follows that if an adverse party is restricted from being 500 feet from a victim, the circuit court can also restrict that party from being within 500 feet of the victim's residence, if the circuit court considers KRS 403.740(2), which in this case it did.

### E. Counseling with Anderson County Recovery

In addition to restraining an adverse party from a particular location, KRS 403.740(1) allows a circuit court to direct one or both parties to receive counseling services available in the community. KRS 403.7505 provides authority to the Cabinet for Health and Family Services to promulgate certification standards for mental health professionals that may provide court-mandated treatment services for domestic violence offenders.

There is no language granting leave to circuit courts to assign a particular provider or how long classes must last when ordering domestic violence counseling; however, there is no language prohibiting them from doing so either. Had the legislature wanted to completely bar circuit courts from choosing a specific provider, it would have explicitly done so in the statutes. Regardless, McClusky did not properly preserve his argument challenging the specificities of the domestic violence classes ordered for appeal anyway. He did not object to the classes when they were ordered during the hearing, no motion has been filed with the circuit court requesting a different provider, and no statement on how this issue

was preserved is contained in his brief. McClusky's arguments for why a different provider may be more appropriate are well taken, but the most we choose to do in this instance is to review the issue for manifest injustice. *See Petrie v. Brackett*, 590 S.W.3d at 834 (citations omitted). Based on the discussion above, there is no manifest injustice, as the circuit court's actions were not contrary to statute.

## IV. CONCLUSION

Accordingly, we hold that the circuit court did not abuse its discretion and we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Carrie Cotton
Frankfort, Kentucky